**Charles CHE–LI SHEN, Petitioner,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 84–1271.**

United States Court of Appeals, Tenth Circuit.

Dec. 12, 1984.

**1470**

George S. Carter, Denver, Colo. (Milenia I. Soto, Denver, Colo., with him on brief), for petitioner.

Donald A. Couvillon, Dept. of Justice, Washington, D.C. (Richard K. Willard, Thomas W. Hussey, and David V. Bernal, Washington, D.C., with him on brief), for respondent.

Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Charles Che-Li Shen seeks judicial review in this Court of an order of the Board of Immigration Appeals (the Board). The Board dismissed Shen's appeal of a ruling by an Immigration Judge in the Immigra-

tion & Naturalization Service (INS) finding Shen to be deportable and denying his application for adjustment of status to that of permanent resident under 8 U.S.C. § 1255 (1976).

Shen is a citizen of China (Taiwan). He entered the United States at Seattle, Washington, on September 27, 1974. He entered on a B–2 visa, which allowed him to remain in the United States for four months. His status was as a nonimmigrant temporary visitor in the United States under 8 U.S.C. § 1101(a)(15) (1976). Shen's intention upon entry into the United States was to take a position as a cook of Chinese food at the China Dragon Restaurant in Jackson, Wyoming. His employer at that restaurant, James Brooks, submitted an application entitled "Job Offer for Alien Employment" (R. 101–102) to the Wyoming State Employment Service in Riverton, Wyoming, on or about September 26, 1974. This application was made for the purpose of procuring a labor certification for Shen pursuant to 8 U.S.C. § 1182(a)(14) (1976) and 20 C.F.R. Part 656 (1984). See also 8 C.F.R. § 245.-2(6)(2) (1984): "the applicant's employer or prospective employer makes the application for the certification to the local State Employment Service." The Wyoming State Employment Service, acting for the Department of Labor, certified that, as required by 20 C.F.R. § 656.2(a) (1984), there were not sufficient U.S. workers qualified and available for Shen's job and that his employment would not adversely affect the wages and working conditions of workers in the U.S. similarly employed. Shen's labor certification was granted on December 20, 1974.

Shen then applied to the INS for an adjustment of status to that of immigrant and permanent resident pursuant to the provisions of 8 U.S.C. § 1255 (1976) and 8 C.F.R. Part 245 (1984). His application (hereinafter referred to as "adjustment application") was made on February 25, 1975, and was filed (received) by the INS on March 3, 1975 (R. 95). Shen's adjustment application was based in large part on his recently granted labor certification (the statutory requirements for adjustment of

status will be discussed below), and that labor certification in turn was based on Shen's ability to prove that he met the stated qualifications for his employment. Those qualifications included two to three years experience as a cook of Chinese food. (R. 101, 114). In support of his adjustment application, Shen submitted an affidavit from one Yang Hung Hui (hereinafter Yang), Director and Chief Chef of The Hong Kong Chinese Bank Mess Hall. The affidavit was dated October 12, 1974, and stated that Shen had been employed as a cook in that restaurant for some two years and eight months. (R. 103).

In processing Shen's adjustment application, the INS District Director had a Hong Kong INS investigator check on Yang's affidavit. The investigator procured another affidavit from Yang, dated October 6, 1975. This second affidavit repudiated the prior affidavit, stating now that Shen had never been employed as a cook at the restaurant. He said that Shen had only been an "apprentice-cook" for three months, learning how to prepare Shanghai dishes during his off-duty hours. The prior affidavit, Yang said, had been given only "as a favor on account of friendship." (R. 131).

With Shen's evidence of qualification thus repudiated, the District Director notified Shen on November 26, 1975, of his intent to deny the adjustment application and gave him 15 days to submit evidence rebutting the allegations. Shen replied by submitting a third affidavit from Yang, dated December 14, 1975. This third affidavit retracted the October 6, 1975, repudiation, saying that Yang had been too busy at the time the investigator had visited him to "give him full detail of his inquiry." Yang further said that the October 12, 1974, affidavit (the first one) was "an absolute truth." (R. 118). In addition to this third affidavit from Yang, Shen submitted two documents from his employer in Jackson which attested to Shen's competence.

Shen's additional evidence was not good enough for the District Director, and on January 24, 1978, he denied the adjustment application for lack of prosecution. The INS had taken almost three years to rule on the application. In the next few months, various letters were exchanged between Shen's counsel and the INS, and on June 29, 1978, the INS began deportation proceedings against Shen with an Order to Show Cause.

During the deportation proceedings, Shen was entitled to renew his adjustment application, 8 C.F.R. § 245.2(a)(4) (1984), and he did so. The Immigration Judge therefore had to rule on two separate issues: (1) whether the INS had shown that Shen was deportable, and (2) whether Shen's renewed adjustment application should be granted. If the adjustment application were granted, Shen would no longer be in violation of the terms of his visa, and therefore no longer deportable. *See Marino v. INS*, 537 F.2d 686 (2d Cir. 1976).

On July 8, 1980, the Immigration Judge found Shen to be deportable because the INS had established the grounds for deportation, namely that Shen had "overstayed" his visa. (The concept of "overstay" will be discussed below.) Furthermore, the Immigration Judge denied Shen's renewed adjustment application. The China Dragon Restaurant in Jackson had closed in January of 1977, and Shen was now working at another restaurant under the same ownership in Denver, Colorado. The Immigration Judge held that Shen's labor certification was no longer valid and could not serve as a basis for adjustment of status. His rulings were affirmed by the Board when it dismissed Shen's appeal on January 31, 1984.

Shen now challenges the Board's dismissal, raising a number of contentions. First, he claims that his deportability was not established by clear, unequivocal and convincing evidence. Second, he claims that he was statutorily eligible for discretionary relief (meaning statutorily eligible for adjustment of status), and that the Immigration Judge erred in failing to exercise favorable discretion in the matter. Third, he claims that the INS was estopped from initiating deportation proceedings against him because it took so long in processing

his adjustment applications and failed to consider his rebuttal evidence.

## I.

■ In his first argument, Shen asserts that the INS failed to sufficiently establish his deportability. In a deportation proceeding, the INS has the burden of establishing grounds for the alien's deportability by clear, unequivocal and convincing evidence. 8 U.S.C. § 1252(b)(4) (1976); 8 C.F.R. § 242.14(a) (1984); *Woodby v. INS*, 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966). One of the statutory grounds for deportability is given generally at 8 U.S.C. § 1251: "[an alien who] ... is in violation of this chapter or is in violation of any other law of the United States." 8 U.S.C. § 1251(a)(2) (1976). An alien is in this category if he has "overstayed" his visa. An alien is an "overstay" if (1) the alien was admitted for a temporary period, (2) that period has elapsed, and (3) the alien has not departed. *Matter of Teberen*, 15 I & N Dec. 689 (BIA 1976); *Milande v. INS*, 484 F.2d 774, 776 (2d Cir.1973). We affirm the Board's holding that the INS met its burden in establishing that Shen is an "overstay"; indeed, Shen does not contest any of the operative facts in the "overstay" determination. It is enough that Shen was admitted on a four-month B–2 visa and is still in the United States at this time. Shen is therefore deportable unless he prevails on either his second or his third arguments, thereby vitiating the effect of the "overstay" determination.

## II.

■ We consider now the Board's affirmance of the Immigration Judge's denial of Shen's renewed application for adjustment of status to that of permanent resident. As a preliminary matter, we note that we have jurisdiction to review the denial of the renewed adjustment application under 8 U.S.C. § 1105a(a) (1976). *Ameeriar v. INS*, 438 F.2d 1028, 1035 (3d Cir. 1971) (Gibbons, J., dissenting on other grounds). This is because the denial of the renewed adjustment application was part of a deportation proceeding; such a denial would not otherwise be reviewable. *But-*

*terfield v. INS*, 409 F.2d 170, 173 (D.C.Cir. 1969). *See also* 8 C.F.R. § 245.2(a)(4) (1984). It follows, then, that the District Director's January 24, 1978, denial of Shen's original adjustment application is not reviewable in this Court, and we wish to make it clear that it is not under consideration in this review.

The processing by the INS of an adjustment application is two-tiered. *Bagamasbad v. INS*, 531 F.2d 111, 115–16 (3d Cir. 1976). First, 8 U.S.C. § 1255(a) imposes three threshold requirements for adjustment of status: "(1) the alien makes an application for adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time the application is filed." 8 U.S.C. § 1255(a)(1)–(3) (1976). If the alien satisfies these threshold requirements, he is deemed "statutorily eligible," and the process proceeds to the second tier. Even if the alien is "statutorily eligible," the INS still retains discretion to grant or deny the adjustment. 8 U.S.C. § 1255(a) (1976).

■ Here, Shen has satisfied only the first and third threshold statutory requirements. First, he has made application for adjustment. Second, the Immigration Judge found that immigrant visas were available for China during March, April and May of 1975 (R. 56), so a visa was available to Shen when the original adjustment application was filed. The INS argues here that Shen does not meet the "visa availability" requirement because the controlling date of visa availability for purposes of "statutory eligibility" was the date Shen applied for adjustment during the deportation proceeding in July, 1978, but that argument is incorrect. Shen's July, 1978, application was found by the Board to be a "renewed" application, not a "new" application (R. 2); therefore, visa availability on the date of the original application is controlling. *See Ka Fung Chan v. INS*, 634 F.2d 248, 252–53 (5th Cir.1981).

■ Shen cannot, however, satisfy the second threshold requirement for "statuto-

ry eligibility," because he is not eligible to receive an immigrant visa. 8 U.S.C. § 1255(a)(2) (1976). An alien's eligibility to receive a nonpreference immigrant visa such as that sought by Shen depends, among other things, on the existence of a valid labor certification. 8 U.S.C. § 1153(a)(7) (Supp. IV 1980). As mentioned above, Shen did obtain a valid labor certification from the Department of Labor (through the Wyoming State Employment Service) on December 20, 1974. We agree with Shen that the labor certification, even though it was based on Yang's questionable affidavit, was never declared invalid by way of a determination "of fraud or willful misrepresentation of a material fact involving the labor certification application" pursuant to 20 C.F.R. § 656.30(d) (1984). The labor certification, however, involved a specific job offer and was valid only for that particular opportunity and for the "area of intended employment" stated in the application. 20 C.F.R. § 656.30(c)(2) (1984). Here, the labor certification was for employment at the China Dragon Restaurant in Jackson, Wyoming. As mentioned earlier, that restaurant closed in January, 1977, at which time the owner and Shen both relocated in Denver, Colorado. Shen submits that the term "area of intended employment" as used in the regulations should include all the states in a "region" as used in the Department of Labor's Technical Assistance Guide. Region VIII includes the states of Wyoming and Colorado. Thus, argues Shen, he remained within his "area of intended employment" and his labor certification is still valid. The problem with Shen's argument is that the term has been defined differently by regulation:

> "Area of intended employment" means the area within normal commuting distance of the place (address) of intended employment. If the place of intended employment is within a Standard Metropolitan Statistical Area (SMSA), any place within the SMSA is deemed to be within normal commuting distance of the place of intended employment. 20 C.F.R. § 656.50 (1984).

Since the distance between Jackson and Denver is some 500 miles, Shen's relocation in 1977 took him outside his "area of intended employment," and his labor certification was no longer valid when he submitted his renewed adjustment application to the Immigration Judge in July of 1978. Accordingly, he was not eligible for an immigrant visa and not "statutorily eligible" for adjustment of status under 8 U.S.C. § 1255(a)(2) (1976). Inasmuch as Shen was not "statutorily eligible," we need not reach the second tier of the inquiry, i.e., whether or not favorable discretion was warranted. Shen's renewed adjustment application was properly denied.

### III.

We now turn to Shen's contention that the INS is equitably estopped from deporting him because of its delay in considering his rebuttal evidence and processing his original and renewed adjustment applications. The record shows that the INS took almost three years to rule on his original adjustment application and over two years to rule on his deportation and renewed adjustment application. (R. 47, 90, 94–5.)

The traditional requirements in this circuit for equitable estoppel are as follows: (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Lurch v. United States,* 719 F.2d 333, 341 (10th Cir.1983); *City and County of Denver v. Bergland,* 695 F.2d 465, 482 (10th Cir.1982). In addition, there is an additional consideration of public policy when a party seeks to estop the Government. If the Government is unable to enforce the law because of estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. *Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42, 52 (1984). *See also Home Savings & Loan Assn. v. Nimmo,* 695 F.2d 1251, 1260 (10th Cir.1982) (McKay, J., dissenting), *vacated*

and remanded, —— U.S. ——, 104 S.Ct. 2673, 81 L.Ed.2d 870 (1984), *vacated and remanded,* 742 F.2d 585 (10th Cir.1984). In Judge McKay's dissent, this policy was phrased in terms of separation of powers considerations if judicial use of estoppel would frustrate the purpose of valid statutes expressing the will of Congress. This is especially important in cases such as this because the enforcement of the immigration laws by the INS is becoming ever more difficult. *INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982).

██ In the instant case, however, we need not reach these additional policy considerations because Shen can satisfy only the first of the four requirements of the traditional estoppel test. Shen can point to no "detrimental reliance" on his part in response to the INS delays; in fact, the delays were beneficial to Shen because they gave him more time to submit the necessary documentation in support of his applications. Additionally, Shen makes no showing of "affirmative misconduct" on the part of the INS. There is simply no conduct by the INS here that was intended to lead Shen astray. Shen can point only to administrative delay in processing his adjustment applications, and there is no indication that the delay was deliberate or even unwarranted, given Yang's conflicting affidavits and the other circumstances of the case. The Supreme Court has held in a recent case that a delay by the INS in processing these adjustment applications, although considerably shorter (18 months), did not amount to the kind of "affirmative misconduct" that might be sufficient to estop the Government. *INS v. Miranda, supra.* Similarly, we find that the INS is not estopped from completing its deportation proceedings against Shen here.

The decision of the Board of Immigration Appeals is AFFIRMED.