Lawrence L. PENNY,
Plaintiff–Apellee/Cross–Appellant,

v.

Louis O. GIUFFRIDA, Director Federal Emergency Management Agency Defendant–Appellant/Cross–Appellee.

Nos. 87–1767, 87–2622.

United States Court of Appeals,
Tenth Circuit.

Argued Dec. 7, 1989.
Decided March 12, 1990.

David A. Poarch (Robert L. Pendarvis, with him on the briefs), of Luttrell, Pendarvis, Rawlinson & Poarch, Norman, Okl., for plaintiff-appellee/cross-appellant.

Jay S. Bybee, Appellate Staff, Civ. Div., U.S. Dept. of Justice (John R. Bolton, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., William S. Price, U.S. Atty., Oklahoma City, Okl., and John F. Cordes, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., with him on the briefs), for defendant-appellant/cross-appellee.

Before BALDOCK, McWILLIAMS and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Oklahoma against Louis Giuffrida, Director of the Federal Emergency Management Agency ("FEMA"), and in favor of plaintiff-appellee Lawrence Penny, for $35,000. On appeal, FEMA argues that the district court incorrectly held that FEMA was estopped from denying liability, that the district court erred in awarding Penny recovery on inconsistent theories, and that the district court's award of inter-

est was improper. In a related appeal, Penny argues that the district court erred in denying attorney's fees. For the reasons presented in this opinion, we hold that it was error to find FEMA liable under an estoppel theory, and we therefore reverse the district court's judgment in that regard. We find no error, however, in the district court's refusal to award attorney's fees to Penny, and we therefore affirm that decision.

### Facts

In December 1977, Lawrence Penny applied for a Home Loan Guaranty with the Veterans Administration ("VA") on a home in the Norman, Oklahoma area. Using a VA form, Penny's mortgage company submitted to the VA a Request for Determination of Reasonable Value, which included a metes-and-bounds description of the tract and listed the property address as a rural route number. The VA subsequently issued a Certificate of Reasonable Value, which included the following condition: "Flood insurance required in accordance with VA Reg. 4326."

Soon thereafter, Kenneth Bridges, an insurance agent employed by Farmers Insurance Company and authorized to write insurance under the National Flood Insurance Program ("NFIP"), informed Penny that he would need flood insurance in order to qualify for the VA-guaranteed loan. At Penny's request, Bridges subsequently prepared a flood insurance policy application for Penny for $35,000 of coverage. On the application, Bridges described the house as being in Cleveland County, Oklahoma, and added a parenthetical that stated: "(inside city limits of Norman)." In fact, Penny's home was located in Cleveland County, but outside the city limits of Norman. It is undisputed that while Norman, Oklahoma, qualified for the NFIP, the area of Cleveland County located outside Norman's city limits did not.

Bridges submitted the application to the St. Paul Fire and Marine Insurance Company, which, as servicing agent for the NFIP, approved the application on December 30, 1977. Penny paid his first annual premium

of $88.00, and FEMA issued him a flood insurance policy. Penny continued to pay his annual premiums for the years 1978 through 1982.

On May 18, 1982, Penny's home was flooded. When Penny reported the loss, an agent from the General Adjustment Bureau surveyed the property and estimated Penny's losses at $35,124.05. In July 1982, the NFIP administrator denied Penny's claim on the ground that Penny's home was not located in a community participating in the NFIP, and, consequently, Penny was not eligible for NFIP coverage. In August 1982, FEMA cancelled Penny's insurance effective March 20, 1982, and returned his last premium.

In 1984, Penny brought suit against Bridges, Farmers Insurance Company, and FEMA. In his complaint, Penny alleged that Bridges and Farmers Insurance Company were liable in tort for their negligence in issuing the flood insurance policy. He further alleged that FEMA was liable in contract and was equitably estopped from denying liability under the policy. Bridges and Farmers filed a cross-claim against FEMA for indemnification.

On Penny's negligence claim against Bridges and Farmers, the jury found for Penny in the amount of $40,000.[1] The estoppel claim against FEMA was tried simultaneously to the court, and it held that FEMA was equitably estopped from denying liability to Penny under the policy and that FEMA was jointly and severally liable with Bridges and Farmers to the extent of the $35,000 policy limit.[2] The district court awarded Penny prejudgment interest and costs against FEMA but denied him attorney's fees because it found that FEMA's position had been "substantially justified." FEMA appeals from the judgment against it, and Penny appeals from the denial of attorney's fees.

## Issues on Appeal

FEMA raises three arguments on appeal: (1) the district court incorrectly held that FEMA was estopped from denying liability under the policy; (2) the district court erred by awarding Penny recovery on inconsistent theories; and (3) the district court's award of interest was improper because Congress has not authorized interest awards against the United States under the NFIP. Penny appeals on the ground that the district court erred in denying attorney's fees. Because we reverse the district court's conclusion that the government was estopped from denying liability under the policy, we need not address the other issues raised by FEMA.

## Discussion

■ The district court held that the traditional elements of estoppel were present in this case and that FEMA engaged in "affirmative misconduct" so as to warrant a finding that FEMA was estopped from denying coverage under the policy. We disagree.

■ Historically, equitable estoppel has been used to prevent a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 105, at 733 (5th ed. 1984). The purpose of the doctrine of equitable estoppel is to ensure that no one will be permitted to "take advantage of his own wrong." *R.H. Stearns Co. v. United States*, 291 U.S. 54, 62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). In private suits, the traditional elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's

---

**1.** Penny's judgment against Bridges and Farmers Insurance Company was not restricted to the $35,000 policy limit because the action sounded in tort, not contract.

**2.** The district court also denied the cross-claims of Bridges and Farmers against FEMA.

conduct to his injury. *Che–Li Shen v. INS,* 749 F.2d 1469, 1473 (10th Cir.1984).

The law of estoppel against the government is considerably less clear. Of course, the government is ordinarily bound by the *authorized* acts of its agents under traditional concepts of agency or contract law. *See, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (Court refused to permit one prosecutor to assume a legal position contrary to the legal position stated in a plea bargain negotiated by the original prosecutor); *Hollerbach v. United States,* 233 U.S. 165, 172, 34 S.Ct. 553, 555, 58 L.Ed. 898 (1914) (Court refused to permit the government to assert a position contrary to an affirmative representation that it had made in a contract for the repair of a dam). The difficulty comes when one seeks to hold the government responsible for the *unauthorized* acts of its agents under estoppel concepts. Traditionally, the Supreme Court has held that *unauthorized* acts of the government agents cannot be the basis for estoppel. *See, e.g., United States v. Stewart,* 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40 (1940); *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917). However, recent Supreme Court decisions have at least suggested the possibility that unauthorized official conduct may give rise to an estoppel against the government where the litigant makes out the requisites of private estoppel and additionally shows the existence of "affirmative misconduct." Nevertheless, no Supreme Court case has ever actually applied estoppel against the government for the unauthorized acts of its agents, and a 1984 Supreme Court case has made it clear that the Court still has not resolved whether estoppel may ever be applied against the government. *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60 & n. 12, 104 S.Ct. 2218, 2224 & n. 12, 81 L.Ed.2d 42 (1984).[3]

Modern estoppel cases begin with *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the leading case expressing the traditional limitations of equitable estoppel against the government. In *Merrill,* two farmers relied on a government agent's promise that their entire wheat crop would be federally insured by the Federal Crop Insurance Corporation ("FCIC"). Unknown to the farmers or the agent, regulations promulgated by the FCIC prohibited insurance on a certain portion of their crop. When drought destroyed the crop, the FCIC denied the farmers' claim for insurance on the basis of the new regulations. The Supreme Court, while acknowledging that the requirements for private estoppel were satisfied, held that the farmers were presumed to know the content of the FCIC regulations regardless of the "hardship resulting from innocent ignorance." *Id.* at 385, 68 S.Ct. at 3. In addition, the Court said that estoppel against the government would violate "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.*

In *Montana v. Kennedy,* 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961), the Court refused to apply estoppel against the government, but the analysis in that case suggested that there might be circumstances under which an estoppel argument might succeed against the government. In *Montana,* the plaintiff argued for estoppel because a government official had given erroneous information that prevented the plaintiff's American mother from entering the United States just before the plaintiff's birth. The Court declined to estop the government from denying the plaintiff citizenship because the official's well-intentioned but mistaken advice fell "far short of misconduct such as might prevent the United States from relying on petitioner's foreign birth." *Id.* at 314–15, 81 S.Ct. at 1341.

In its next estoppel case, *INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam), the Supreme Court similarly refused to find estoppel against the govern-

---

**3.** For an excellent discussion of the law of estoppel against the government, see Comment, *Unauthorized Conduct of Government Agents: A*   *Restrictive Rule of Equitable Estoppel Against the Government,* 53 U.Chi.L.Rev. 1026 (1986).

ment while acknowledging that *Montana* left open the possibility of estoppel in a situation with sufficiently egregious affirmative misconduct. In *Hibi*, a foreign national sought to estop the government from asserting against him a statutory deadline for applying for citizenship because the government did not inform him of his right to apply for citizenship nor did it provide the congressionally-mandated procedures to assist him in making timely application for citizenship. The Court held that the government could not be estopped because failure to publicize rights or station naturalization officials in a foreign country did not amount to "affirmative misconduct." *Id.* at 8–9, 94 S.Ct. at 21–22.

In *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam), the plaintiff sought advice from a government agent who mistakenly believed that the plaintiff was ineligible for Social Security benefits and advised her not to apply. When the plaintiff later realized that she was eligible and tried to obtain benefits, she was denied relief because she had not complied with the regulations. Although the Court expressed sympathy for the plaintiff, it refused to estop the government because the plaintiff had failed to establish the requisite "affirmative misconduct." *Id.* at 788–90, 101 S.Ct. at 1470–71. In the course of conducting its analysis, however, the Court cautioned that it had never decided whether affirmative misconduct could estop the government, nor did it need to so decide in that case because no affirmative misconduct was present there. As in *Merrill*, the Court again expressed concerns for the public fisc. *Id.* at 789 n. 4, 101 S.Ct. at 1471 n. 4.

The next Supreme Court case to discuss governmental estoppel was *INS v. Miranda*, 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam). There, the claimant sought to assert estoppel against the government because of the government's lengthy delay in processing a permanent residency petition. The Court held that mere delay did not constitute "affirmative misconduct." *Id.* at 19, 103 S.Ct. at 283. It also advised that the Court's disinclination in *Schweiker* to apply estoppel

against the government should not be limited to situations involving the public fisc. The Court indicated it was also wary of applying estoppel in other situations involving "matters of broad public concern." *Id.*

The Court's most recent estoppel case is *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In *Heckler*, Community Health Services of Crawford County, Inc. ("CHS") participated in the Medicare and Comprehensive Employment Training Act ("CETA") programs. CHS received double reimbursement for some specific operating expenses because of the overlap between the two programs. Government regulations prevented such double recovery, although CHS acted in good faith in seeking such reimbursement upon mistaken advice that it had received from a government agent. When the Health and Human Services Department later tried to recover the funds, CHS sought to estop the government from enforcing its regulations. The Supreme Court, in a unanimous decision, repeated its reasoning in *Merrill* that citizens are presumed to know the law and may not rely on government agents' incorrect interpretations of the law. *Id.* at 63 & n. 17, 104 S.Ct. at 2225 & n. 17. Once again, the Court avoided the necessity of ruling on whether the government might ever be estopped because there the traditional elements of estoppel were missing. *Id.* at 60–61, 104 S.Ct. at 2224–25.

Although the Supreme Court consistently has reversed lower court decisions granting estoppel, it has continued to leave open the possibility that equitable estoppel against the government might apply in some cases. In light of the aforementioned precedent, however, we do not find that the facts in the case before us would satisfy the criteria for equitable estoppel against the government even if the Supreme Court ultimately decides that such a doctrine is viable. Specifically, we do not believe that FEMA's actions rose to the level of affirmative misconduct.

Penny argues that the government's actions constituting affirmative misconduct

were: (1) the VA's requirement that Penny obtain flood insurance in order to qualify for a home loan; (2) FEMA's acceptance of Penny's premiums from 1977–1982; (3) FEMA's denial of liability when Penny's home was flooded; and (4) FEMA's retroactive cancellation of Penny's policy as of March 20, 1982, and FEMA's tender of only his last premium.

We do not accept Penny's argument that the government, through the VA, required him to obtain flood insurance through FEMA. The Flood Disaster Protection Act of 1973 requires the purchase of flood insurance as a condition to receiving federal or federally-related financial assistance for the construction or acquisition of insurable buildings "within an identified special flood, mudslide (i.e., mudflow), or flood-related erosion hazard area that is *located within any community participating in the Program.*" 44 C.F.R. 59.2(a) (emphasis added). Because the Penny property was outside of the city limits, the VA did not have the authority to require Penny to obtain insurance. Therefore, Penny cannot be heard to say that he relied on the VA's written requirement of insurance, because he is "expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. at 63, 104 S.Ct. at 2225.

Nor do we accept Penny's assertion that FEMA knew that Penny's property was ineligible for flood insurance when it took Penny's premiums. Until the time of Penny's claim, FEMA was unaware that Penny's house was not in the city limits of Norman, and therefore that FEMA was prohibited by statute from insuring it, because FEMA, like Penny, relied on Bridge's written description in Penny's insurance application placing Penny's house "inside [the] city limits of Norman." In this regard, the facts are analogous to those in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam), where the field agent, presumably knowledgeable in the law, mistakenly believed that the plaintiff was ineligible for Social Security benefits. Similarly, in our case, the law was not in dispute, but FEMA mistakenly believed that the factual circumstances made Penny eligible for insurance. The Supreme Court has indicated that mere negligence on the part of a government agent does not reach the level of affirmative misconduct. *See Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. at 64, 104 S.Ct. at 2226 ("The fact that [the government agent's] advice was erroneous is, in itself, insufficient to raise an estoppel ..."); *INS v. Miranda,* 459 U.S. at 18, 103 S.Ct. at 283 ("Even if the INS arguably was negligent ..., its conduct was not significantly different from that in *Montana* and *Hibi....* [N]either the Government's conduct nor the harm to the respondent is sufficient to estop the Government ..."); *Schweiker v. Hansen,* 450 U.S. at 788–89, 101 S.Ct. at 1471 (government field agent's negligence and failure to follow governmental regulations did not justify abnegating the " 'duty of all courts to observe the conditions defined by Congress for charging the public treasury' " (quoting *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. at 385, 68 S.Ct. at 3)); *Montana v. Kennedy,* 366 U.S. at 314–15, 81 S.Ct. at 1340–41 (official's well-meant but erroneous advice could not sustain estoppel against the government).

FEMA was acting pursuant to its statutory authority in denying liability to Penny, and it would have acted beyond its authority to extend insurance to Penny. Penny offers no authority to suggest that an agency's conformance with a congressional enactment establishes affirmative misconduct.

Finally, although we do not approve of FEMA's tender of only the last premium paid, that action occurred after any possible reliance by Penny and is not relevant to an estoppel analysis.

The government's actions in this case were less egregious than governmental misconduct that the Supreme Court has found not to constitute affirmative misconduct. We hold, therefore, that the district court was incorrect in concluding that the affirmative misconduct requirement has

been met. Because we conclude that there was no showing of affirmative misconduct, we need not consider the other issues raised by FEMA in its appeal. With regard to Penny's appeal of the district court's order denying attorney's fees we find no error in the district court's ruling that FEMA's position was "substantially justified," and therefore we conclude that there was no abuse of discretion in the district court's refusal to award Penny attorney's fees.

Accordingly, we REVERSE the judgment against FEMA, and we AFFIRM the order of the district court refusing to award Penny attorney's fees.