**Robert MALONEK, 520–20–6233 and Jacqueline Malonek 520–24–2712, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 95–CV–1021–B.**

United States District Court, D. Wyoming.

April 29, 1996.

Drew A. Perkins, Casper, WY, for Plaintiffs.

Donald R. Wrobetz, Assistant U.S. Attorney, District of Wyoming, Cheyenne, WY, for Defendant.

### ORDER and JUDGMENT

BRIMMER, District Judge.

After a trial to the bench (with an advisory jury), the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

The Maloneks timely filed a joint federal income tax return for tax year 1984. In this return, the Maloneks calculated that they owed $12,920.85 in taxes to the United States. The IRS assessed and the Maloneks paid these taxes.

On April 15, 1988, the Maloneks timely filed a joint federal income tax return for tax year 1987. In their 1987 return, they showed $3,731 in taxes due. The IRS assessed and the Maloneks paid these taxes.

On August 5, 1990, the Maloneks filed an amended return for tax year 1987. In their amended 1987 return, the Maloneks claimed a $3,904 refund. They based their refund claim on a decrease in dividend income and an increase in Schedule E losses (i.e., losses associated with their rental property). This amended return showed a $30,118 loss for the tax year 1987.

The IRS selected the Maloneks' amended 1987 return for an audit. The IRS assigned Revenue Agent Stan Wood to the audit, and on April 12, 1991, he began the audit.

On May 14, 1991, the Maloneks' accountant, Richard Fagan, called Revenue Agent Wood to discuss the amended 1987 return and the audit. This was the first contact between the Maloneks' accountant and Wood.

On September 13, 1991, Wood completed his initial report on the Maloneks' amended 1987 return. In this report, Wood proposed that the IRS allow the Maloneks' loss in full. The IRS District Director reviewed this report.

In December 1991, the IRS informed the Maloneks' accountant that it had completed its audit of the Maloneks' amended 1987 return.

On December 26, 1991, the Maloneks filed an amended return for tax year 1984. In their amended 1984 return, the Maloneks claimed a $9,592 refund. They based this refund claim on a carryback of their $30,118 net operating loss from tax year 1987.

On July 16, 1992, the IRS sent the Maloneks a letter stating that it would not allow their refund claim because it had not been timely filed.

The Maloneks appealed this decision to the IRS Appeals Division. On September 20, 1993, the IRS formally disallowed the Maloneks' refund claim for 1984 in its entirety

because the statute of limitations for filing that claim expired on April 15, 1991 (three years after they filed their 1987 return).

### Conclusions of Law

■ The Internal Revenue Code provides that taxpayers can bring suit against the IRS only if they first have "duly filed" or "timely filed" a claim for refund or credit. 26 U.S.C. § 7422(a). Failure to file a timely claim for refund deprives a court of subject matter jurisdiction over actions instituted to recover overpayments or refunds. *United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 1365, 108 L.Ed.2d 548 (1989).

The governing statute of limitations in this case is a special rule applicable to net operating loss carrybacks. 26 U.S.C. § 6511(d)(2). This statute provides that taxpayers must file refund claims within three years "after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss" which results in the carryback (and claim for refund). *Id.*

■ In this case, the Maloneks timely filed their 1987 tax return on April 15, 1988. At the time they filed this return, the statute of limitations began to run for any refund claims that they might have based on their 1987 return. Although the Maloneks did not have a refund claim when they filed their original 1987 return, they did have a refund claim when they filed their amended 1987 return on August 5, 1990. Unfortunately for the Maloneks, the statute of limitations did not begin to run anew on the date they filed their amended return. *Kaltreider Constr., Inc. v. United States*, 303 F.2d 366, 367 (3d Cir.1962); *Hannahs v. United States*, 1995 WL 230461, *3 n. 2 (W.D.Tenn.1995); *Dowell v. Commissioner*, 68 T.C. 646, 649, 1977 WL 3599 (1977); *Klemp v. Commissioner*, 77

T.C. 201, 214, 1981 WL 11222 (1981) (Parker, J., dissenting on other grounds).[1] Because their refund claim arose from a net operating loss carryback, the special three year statute of limitations applies and the Maloneks had to file their refund claim on or before April 15, 1991.

The Maloneks did not file their amended 1984 tax return (by which they claimed a refund based on their net operating loss from 1987) until December 26, 1991. This was more than 8 months after the statute of limitations expired. The statute therefore bars the Maloneks' refund claim (and deprives this Court of jurisdiction) unless they can prove: (1) they filed an "informal claim" that put the IRS on notice of their refund claim; (2) the IRS should be equitably estopped from raising a statute of limitations defense; or (3) the statute of limitations should be equitably tolled.

■ As an initial matter, the Court notes that the IRS cannot waive the statute of limitations. *Vishnevsky v. United States*, 581 F.2d 1249, 1252–53 (7th Cir.1978); *Essex v. Vinal*, 499 F.2d 226, 231 (8th Cir.1974). Also, there is no contention in this case that the IRS expressly agreed to extend the statute of limitations.

### 1. Informal Claim

Decades ago, the Supreme Court recognized the validity of informal refund claims:

> a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless by treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

---

1. Though this is the rule, the Court cannot say it is fair. Most taxpayers will not even know that they have a refund claim until they complete and file an amended return. Like nearly all other statutes of limitation—which begin to run when a party knows or should have known about the existence of a claim—the statute of limitations for a tax refund should (in the absence of fraud) begin to run when the taxpayer files an amended return. This, in fact, is how things work when the tables are turned and the government decides to prosecute tax fraud. Under these circumstances, if a taxpayer files a fraudulent return and later files a non-fraudulent amended return, the statute of limitations for prosecuting the original fraud begins running again on the date the amended return is filed. Apparently, what is good for the IRS goose is not good for the taxpayer gander.

*United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941). Relying on *Kales,* the Seventh Circuit has observed:

> a general notice *advising the government that the taxpayer believes his taxes have been erroneously assessed, requesting a refund* ... is sufficient to constitute an "informal" refund claim which may be perfected by the filing of a formal refund claim after the refund claim limitations has expired.

*O'Brien v. United States,* 766 F.2d 1038, 1041 n. 3 (7th Cir.1985) (emphasis added) (citations omitted).

Although there are no rigid guidelines as to what constitutes an informal claim, it must have a written component *"and should adequately apprise the Internal Revenue Service that a refund is sought* for certain years." *Mills v. United States,* 890 F.2d 1133, 1135 (11th Cir.1989) (emphasis added) (quoting *Arch Engineering Co. v. United States,* 783 F.2d 190, 192 (Fed.Cir.1986)). In this regard, the Court of Claims has stated:

> It is not enough that the [IRS has] in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund.... On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the writing component. In addition to the writing *and some form of request for a refund,* the only essential is that there be made available sufficient information as to the tax and the year to enable the [IRS] to commence, if it wishes, an examination into the claim.

*American Radiator & Standard Sanitary Corp. v. United States,* 318 F.2d 915, 920 (Ct.Cl.1963) (emphasis added).

■ Considered together, these cases establish the basic proposition that to prevail on their informal claim argument, the Maloneks bear the burden of proving that: (1) they filed a writing with the IRS; (2) this writing requested a refund or notified the IRS that they would seek a refund; and (3) the IRS had enough information to begin examining their claim before they filed their formal refund claim.

■ In an effort to carry their burden on this issue, the Maloneks assert that their amended 1987 return, which they filed in August of 1990 before the statute expired, constitutes an informal refund claim. As the Maloneks see things, this amended return "contained all of the information necessary to enable the government to compute and investigate the net operating loss carryback to 1984, and [their] claim for refund of 1984 taxes."

The Court cannot agree. At the threshold, the Court views with suspicion the claim that an amended return can satisfy the written component of an informal claim. *Cf. United States v. Commercial Nat'l Bank of Peoria,* 874 F.2d 1165, 1170–72 (7th Cir.1989) (discussing characteristics of correspondence constituting an informal claim). Though the cases are not exactly clear on this point, they strongly suggest that the writings involved are letters or messages to the IRS. In *Kales* the Court notes that the writing may be "too general," 314 U.S. at 194, 62 S.Ct. at 218, in *Commercial Nat'l Bank* the court states that the writing need not contain "magical words," 874 F.2d at 1171, and in *American Radiator* the court remarks that the writing should not be given "a crabbed or literal reading." 318 F.2d at 920. This Court finds it hard to believe that an amended tax return could be "too general," that it could contain "magical words," or that it could be given a "crabbed or literal reading." Although the Court hesitates only slightly in finding that the Maloneks did not lodge the required writing with the IRS, it has no such hesitation finding that the Maloneks did not file a writing that apprised the IRS of their desire to claim a refund.

■ The *sine qua non* of an informal refund claim is that the informal claim, considered as a whole, must "apprise the [IRS] that a refund is sought," *Arch Engineering,* 783 F.2d at 192. It must, in other words, contain "some form of request for a refund." *American Radiator,* 318 F.2d at 920. As the Seventh Circuit stated in *Martin v. United States,* 833 F.2d 655, 660 (7th Cir.1987), "[i]t is not enough that the IRS has in its possession information from which it might find

that the taxpayer is entitled to, or might desire, a refund."

An amended tax return, without more—whether that "more" is verbal communication or written correspondence—does not apprise the IRS that the taxpayer is seeking a refund, and does not contain any form of request for a refund. At most, it contains information from which the IRS could deduce that the taxpayer has a right to, and may in fact seek, a refund. It does not, however, inform the IRS that the taxpayer intends to do so.

Here, the Maloneks can point to nothing more than their amended 1987 return to support their informal refund claim. They did not have any communications—written or verbal—with the IRS regarding their refund claim until after the statute of limitations had expired. Because the Maloneks (a) did not lodge a writing with the IRS that (b) apprised the IRS of their desire to seek a refund before the governing statute of limitations expired, their informal notice claim fails. They cannot rely solely on their amended 1987 return to support this claim.

### 2. Equitable Estoppel

A number of courts have held that the acts of government agents may, as a matter of equity, estop the government from raising a limitations defense. *Miller v. United States,* 500 F.2d 1007, 1010 (2d Cir.1974) (citations omitted); *Howard Bank v. United States,* 759 F.Supp. 1073, 1080 (D.Vt.1991). In such cases, the courts generally have held that estoppel may apply where the government "has done 'anything that would tend to lull the plaintiff into inaction'." *Belton v. Commissioner of IRS,* 562 F.Supp. 30, 33 (D.D.C. 1982) (quoting *Alley v. Dodge Hotel,* 551 F.2d 442, 446 (D.C.Cir.1977)).

██ In this circuit, the requirements for estoppel against the government are a bit more strict. They include the traditional elements of equitable estoppel, which are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was

so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury. *Penny v. Giuffrida,* 897 F.2d 1543, 1545–46 (10th Cir.1990); *Che–Li Shen v. INS,* 749 F.2d 1469, 1473 (10th Cir.1984). In addition, a party seeking to estop the government must prove that there was some sort of "affirmative misconduct" on the part of the government or its agents. *Penny,* 897 F.2d at 1546. Although this Court cannot discern any sound reason to treat the government differently than other parties when it comes to estoppel, a number of other circuits to consider the issue also have held that a party seeking to estop the government must prove "affirmative misconduct." *United States v. Wharton,* 514 F.2d 406 (9th Cir.1975); *United States v. Asmar,* 827 F.2d 907 (3d Cir. 1987); *Deltona Corp. v. Alexander,* 682 F.2d 888, 892 n. 6 (11th Cir.1982).

██ In this case, the Court cannot conclude that the Maloneks have carried their burden of showing that: (1) they relied on the government's words and conduct to their injury or detriment; or (2) the government engaged in affirmative misconduct. The Court will address each issue in turn.

The Maloneks concede that their accountant first contacted the IRS on May 14, 1991 to inquire about filing the amended claim. This concession has serious, not to mention dispositive, consequences. The Maloneks were already injured, irrevocably so, as of May 14, 1991. The Maloneks' alleged injury or detriment, in other words, was already a fact when they first inquired about the need to file a refund claim. When the Maloneks spoke with the IRS on May 14, 1991, the IRS could not do or say anything that would injure them further, or cause them to experience any additional detriment. The Maloneks could not, as a matter of law, suffer any injury or experience any detriment after April 15, 1991, because after that date the limitations period already had expired and the damage already had been done.

Moreover, the Maloneks have failed to demonstrate that the IRS, acting either through Revenue Agent Wood or others, engaged in affirmative misconduct. Even if the

Court credits the entirety of the Maloneks' evidence, it cannot conclude that there was affirmative misconduct here. The IRS might have been mistaken, and it might have failed to inform the Maloneks on May 14, 1991 that the statute of limitations had expired on April 15, 1991, but this is not affirmative misconduct. At most, this indicates that the IRS was negligent, perhaps even recklessly so. But negligence, even reckless negligence, is not affirmative misconduct.

This aside, the Court does not think that anything the IRS did after April 15, 1991 could constitute "affirmative misconduct" as that phrase is used in equitable estoppel cases. After April 15, 1991—the limitations bar date—the game was over for the Maloneks. The IRS might have engaged in all manner of reprehensible conduct after that date, but such conduct could in no way lift the limitations bar. When the limitations period lapsed, it did so by operation of law, not by IRS fiat. Subsequent IRS misconduct could in no way change this fact.

Because the Maloneks have not shown that the IRS caused them injury, and because they have failed to prove that the IRS engaged in affirmative misconduct, their equitable estoppel claim fails.

### 3. Equitable Tolling

Under certain circumstances, the government's actions may equitably toll the statute of limitations. *Brockamp v. United States,* 67 F.3d 260, 261 (9th Cir.1995); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990) (rebuttable presumption of equitable tolling applies to suits against United States). Although the contours of equitable tolling are considerably less clear than those of equitable estoppel, the doctrines are (etymologically and jurisprudentially) related.

 Thus, a party seeking to prove that equitable tolling applies must show, at a minimum, that the government did something which reasonably induced them to believe that the statute of limitations was being tolled or had been extended. *See First Alabama Bank v. United States,* 981 F.2d 1226, 1228 (11th Cir.1993). Although there may be additional requirements to prove equitable estoppel, the Court need not explore those requirements. It need not do so because the Maloneks cannot clear even the initial hurdle for equitable tolling: they have not shown that the government did or said anything which reasonably could have induced them to believe the statute of limitations was being tolled or had been extended.

The simple fact of the matter is that the statute of limitations had already expired—and thus barred the Maloneks' claim—when they first contacted the IRS to inquire about the need to file a refund claim. After the statute had expired (on April 15, 1991), the IRS could not do or say anything to toll the statute. If the IRS in fact represented to the Maloneks that it would extend the statute or that the statute was being tolled (and the Court will assume that it did), these representations could not alter the legally dispositive fact that the statute already had expired. In addition, the Court finds that it is not reasonable (as a matter of law) to rely on representations concerning tolling or extending made after the limitations period had expired. Such representations cannot revive an expired claim.

 Finally, the Court notes that to the extent the doctrine of equitable tolling retains its equitable roots, these roots counsel against tolling in this case. Basic maxims of equity teach that one who would have equity must do equity, and that those who seek equity must not slumber on their rights. Those who seek equity must, in other words, take action to protect their rights before coming to court. With this in mind, the Court notes that it was the Maloneks' inaction which has led to their difficulties. The limitations period already had passed when they finally asked the IRS about the need to file a refund claim.

For these reasons, the Court finds that nothing the IRS said or did equitably tolled the statute of limitations applicable to the Maloneks' refund claim.

### Conclusion

Unfortunately for the Maloneks, the complexities of a byzantine tax code have de-

prived them of money to which they otherwise would be entitled. All that the Court can say on their behalf is that they pay their accountant to know the rules, and he should have contacted the IRS before the statute expired. In addition, this case provides everyone with a lesson: file protective claims if there is even the slightest doubt about filing deadlines. Although the Court doubts that the IRS truly needs the blizzard of protective claims it should receive as a result of this and similar advice, that apparently is what the tax code and the IRS require.

Internal Revenue Code § 6511(d)(2)(A) bars the Maloneks' claim in this case. Because the Maloneks failed to file their claim within the limitations period, this Court lacks jurisdiction over this action. *Dalm*, 494 U.S. at 596, 110 S.Ct. at 1361–62. The Court therefore **ORDERS** that this action is dismissed with prejudice.