**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NELDON P. JOHNSON and
RANDALE P. JOHNSON,

      Plaintiffs - Appellants,

vs.

LINDON CITY CORPORATION;
PLEASANT GROVE CITY
CORPORATION; MICHAEL SMITH,
an individual; MICHAEL ROBERTS,
an individual; DAVID OLIVER, an
individual; COLLIN GORDON, an
individual, and JOHN DOES 1-X,

      Defendants - Appellees.

No. 04-4067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 02-CV-449-TC)**

---

Submitted on the briefs:[*]

Denver C. Snuffer, Jr. and Robert D. Dahle, Nelson, Snuffer, Dahle & Poulsen,
P.C., Sandy, Utah, for Plaintiffs - Appellants.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The cause therefore
is ordered submitted without oral argument.

Peter Stirba and Gary R. Guelker, Stirba & Associates, Salt Lake City, Utah, for Defendants - Appellees.

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and **TYMKOVICH**, Circuit Judge.

**KELLY**, Circuit Judge.

Plaintiffs-Appellants Neldon Johnson and Randale Johnson appeal from the district court's grant of summary judgment in favor of Defendants-Appellees Lindon City Corporation, Pleasant Grove City Corporation, and Officers Michael Smith, Michael Roberts, David Oliver, and Collin Gordon on the Johnsons' claims of unlawful arrest and imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress in violation of state law and 42 U.S.C. §§ 1983, 1985, 1986, and 1988. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## Background

The core operative facts of this case are not disputed. During the spring of 2000, Neldon and Ina Johnson began having marital difficulties. Ina left the marital home and began residing with her daughter, Brenda Smith, and her son-in-law, Michael Smith, a sergeant with the Pleasant Grove police. In July 2000, Ina filed for divorce and obtained a court order freezing a bank account utilized by

Neldon Johnson to operate his business. On July 21, 2000, Neldon became aware of this and went with his son Randale Johnson to confront Ina at the Smith household, located at 184 N. 1165 E in Lindon.

When Ina opened the door, Neldon and Randale Johnson entered the residence and questioned her about the frozen account. Sgt. Smith, who was off-duty, heard this and entered the room. Sgt. Smith repeatedly ordered Neldon and Randale Johnson out of his house. The Johnsons ignored Sgt. Smith's command to leave his house. Sgt. Smith then pushed Neldon toward the door to encourage him to leave the premises. A fight ensued. Neldon Johnson claims that he was attacked by Sgt. Smith, who hit Neldon in the chest, put Neldon in a choke hold, and then attacked Randale. Sgt. Smith and Ina Johnson have a different version of the events, both stating that it was Neldon who threw the first punch. Sgt. Smith, Ina Johnson, and Brenda Smith stated that after Sgt. Smith subdued Neldon, Randale Johnson assaulted Sgt. Smith. During the altercation, Brenda Smith contacted the police.

After the fracas concluded, Sgt. Smith placed Randale and Neldon Johnson under arrest and ordered them to wait until the police arrived. When Sgt. Michael Roberts, the first on-duty officer on the scene, arrived, he noted signs of a struggle, including a damaged coffee table and blood stains on the clothing of Randale Johnson, Neldon Johnson, and Sgt. Smith. Sgt. Roberts also noticed that

Sgt. Smith had a cut on his eye and a couple of cuts on his neck. Sgt. Roberts placed Randale and Neldon Johnson in handcuffs and took them to patrol vehicles. They were transported by defendants David Oliver and Collin Gordon. Sgt. Roberts then collected witness statements from Ina Johnson and Brenda Smith and contacted his superiors. Neldon and Randale Johnson were incarcerated in the Utah County jail. Criminal charges were not brought by the county, but Lindon City brought charges of misdemeanor assault.

Randale and Neldon Johnson both signed Pleas in Abeyance and executed related statements, in which they admitted that they attempted with unlawful force or violence to do bodily injury to Sgt. Smith and were guilty of assault. Because both Randy and Neldon Johnson fulfilled the terms of this plea agreement, the city withdrew their guilty pleas and dismissed the matter.

Neldon and Randale Johnson then filed suit for unlawful arrest and imprisonment in violation of 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and state law claims of false arrest and imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. I Aplt. App. at 60-70. Defendants filed a motion for summary judgment. In ruling upon this motion, the district court found that there was no constitutional violation because the officers had probable cause to arrest for assault and no reasonable jury could find otherwise because the Plaintiffs admitted that they committed assault.

- 4 -

## Discussion

We review the district court's finding of qualified immunity on summary judgment de novo, applying the same legal standard as the district court. Lawmaster v. Ward, 125 F.3d 1341, 1346 (10th Cir. 1997). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Lawmaster, 125 F.3d at 1346. However, the "mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient" to create a genuine issue of material fact. Id. at 1347. Thus, for a genuine issue of material fact to exist, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant. Id.

In general, government officials are entitled to qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In making this determination, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." Wilson v. Layne, 526 U.S. 603, 609 (1999) (citation and internal quotation omitted). If so, we must then determine whether that right was clearly established

at the time of the alleged violation such that a reasonable person in the defendant's position would have known the conduct violated that right. Id.

When a warrantless arrest is the subject of a § 1983 action, defendant officers are "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest." Hunter v. Bryant, 502 U.S. 224, 228 (1991). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988). Thus, the test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest." Beck v. Ohio, 379 U.S. 89, 96 (1964).

In this case, we hold that the district court correctly found that Defendants were entitled to summary judgment, albeit on a slightly different basis than the district court. See Amro v. The Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000). The district court determined that Plaintiffs' Pleas in Abeyance constituted admissions that they committed assault, and, therefore, probable cause existed for their arrest. While we base our holding on a similar analysis, we apply the legal principle of judicial estoppel, a discretionary remedy courts may invoke "to prevent 'improper use of judicial machinery.'" New Hampshire v. Maine, 532

U.S. 742, 750 (2001) (citation omitted).[1]  Although this circuit has repeatedly

refused to apply this principle, United States v. 162 MegaMania Gambling

Devices, 231 F.3d 713, 726 (10th Cir. 2000); United States v. 49.01 Acres of

Land, More or Less, Situate in Osage County, Okla., 802 F.2d 387, 390 (10th Cir.

1986), the Supreme Court's intervening decision in New Hampshire has altered

the legal landscape.  Accordingly, we must follow the guidance of the Court's

binding precedent.  United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1333

(10th Cir. 2003).

    "[W]here a party assumes a certain position in a legal proceeding, and

succeeds in maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position, especially if it be to the

prejudice of the party who has acquiesced in the position formerly taken by him."

Davis v. Wakelee, 156 U.S. 680, 689 (1895).  Although noting that this rule,

known as judicial estoppel, is "'probably not reducible to any general formulation

---

[1]  Our application of judicial estoppel follows directly from the analysis provided by the district court in granting summary judgment.  In particular, the district judge stated, "I think the case law that directly governs is if a person under oath makes a very clear statement of one thing, and then to avoid summary judgment or to avoid the consequences [of that statement] tries to make an explanation and get out of it, the court should disregard it.  And one of the things that is looked at is is it a clear contradiction? This is a clear contradiction."  Aplt. Br. Attach. at 37-38.  Thus, although the court put unnecessary emphasis on whether the statement was under oath, because the court's discussion so closely resembles our analysis of judicial estoppel, our application of that doctrine should come as no surprise to the parties.

of principle,'" New Hampshire, 532 U.S. at 750 (citation omitted), the Court noted several factors which other courts have typically used to determine when to apply judicial estoppel. "First, a party's later position must be 'clearly inconsistent' with its earlier position." Id. (citation omitted). Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996). Second, "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" New Hampshire, 532 U.S. at 750 (citation omitted). The requirement that a previous court has accepted the prior inconsistent factual position "ensures that judicial estoppel is applied in the narrowest of circumstances." Lowery, 92 F.3d at 224. Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 751.

The instant case easily satisfies this three-part test. First, Plaintiffs' current factual position regarding the circumstances of the arrest is diametrically opposed to those taken when they entered the Pleas in Abeyance. Specifically, Plaintiffs admitted that they attempted to use "unlawful force or violence to do bodily

injury to another person to wit Michel [sic] Smith." Aplt. Br. Attach. E, G. Plaintiffs' positions are clearly contradictory; if Plaintiffs acted as they admitted in the statements accompanying their Pleas in Abeyance, Sgt. Smith had probable cause to arrest, and the arrest was therefore lawful. Hunter, 502 U.S. at 228.

Next, the Utah court accepted Defendants' Pleas in Abeyance such that acceptance of their current position that their arrest was unlawful would create "the perception that either the first or the second court was misled." New Hampshire, 532 U.S. at 750 (internal quotation and citation omitted). Under Utah law, a court must accept a Plea in Abeyance in full compliance with Utah Rule of Criminal Procedure 11. Utah Stat. Ann. § 77-2a-3(1). Rule 11 stipulates all the elements a court must find before accepting any plea, all of which were explicitly provided in the statements accompanying the Pleas in Abeyance. Aplt. Br. Attach. E, G. Because Plaintiffs have convinced a Utah court that they attempted to do bodily harm to Sgt. Smith and accepted responsibility for that action, and now attempt to refute and negate that admission in federal court, the clear perception, if we were to accept their present contention, would be that either the Utah court or this court had been misled.

Finally, if Plaintiffs were successful in the present suit, they would "derive an unfair advantage" and "impose an unfair detriment to the opposing party." New Hampshire, 532 U.S. at 751. By entering Pleas in Abeyance, Plaintiffs

received a substantial benefit. Without the Pleas in Abeyance, Plaintiffs faced the possibility of being convicted of assault, Utah Stat. Ann. § 76-5-102, a class B misdemeanor punishable by up to six months' imprisonment, Utah Stat. Ann. § 76-3-204, and a fine of up to $1,000. Utah Stat. Ann. § 76-3-301. However, in exchange for entering Pleas in Abeyance, the State agreed to dismiss the charges as long as Plaintiffs violated no laws except for traffic violations for six months. Aplt. Br. Attach. E, G. After Plaintiffs carried out their end of the bargain, the assault charges against them were dropped. Now, however, after receiving this benefit, Plaintiffs' argue that we should rule their arrest illegal. We, like the Fourth Circuit when presented with very similar facts, find this argument "too much to take" and conclude that Plaintiffs argument is "nothing more than an intentional attempt to mislead the [federal courts] to gain unfair advantage in this action." Lowery, 92 F.3d at 225 (finding that a party who accepts the benefit of a plea and introduces an inconsistent statement in a later § 1983 suit has met this criterion).

Moreover, barring Plaintiffs from asserting that their arrest was unlawful furthers the principles behind judicial estoppel. The Supreme Court noted that other courts have recognized that judicial estoppel "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50

(citations and internal quotations omitted).  We are conscious of Plaintiffs' arguments that the statements in their Pleas in Abeyance were only admissions, and they had valid reasons for pleading.  However, to allow Plaintiffs to accept the benefit of the Pleas in Abeyance and, in the next breath, sue for civil damages stemming from their arrest for crimes they admittedly committed would clearly undermine the integrity of the judicial system.  Thus, there is no "genuine issue of material fact," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), as to whether Defendants had probable cause to arrest Plaintiffs.  The district court's grant of summary judgment was therefore appropriate.

Plaintiffs also contend that the district court failed to consider all bases for recovery, namely their claim of cruel and unusual punishment.  A review of Plaintiffs' Second Amended Complaint reveals that such claims were not asserted. R. Doc. 13.  We generally do not consider issues raised for the first time on appeal, Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720-21 (10th Cir. 1993), and refuse to exercise our discretion to do so here.

Finally, although not argued by the parties, we note that the district court apparently declined to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c).  Plaintiffs do not appeal this determination, and we do not address those claims.

AFFIRMED.