**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 12, 2005**

**TENTH CIRCUIT**

FULSOM CONSTRUCTION
COMPANY INC., an Oklahoma
corporation,

  Plaintiff - Appellant,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, a foreign
corporation; ST. PAUL INSURANCE
COMPANY, a foreign corporation,

  Defendants - Appellees.

Nos. 03-6353 and 04-6087
(D.C. No. 01-CV-1754-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HENRY**, and **MURPHY**, Circuit Judges.

Plaintiff-Appellant Fulsom Construction Company, Inc. ("Fulsom") appeals

from the district court's $25,104.95 judgment in favor of Defendant-Appellee

United States Fidelity and Guaranty Company ("USF&G") on USF&G's

counterclaim based on Fulsom's agreement to indemnify it. In awarding that

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

judgment, the district court granted summary judgment in favor of USF&G and Defendant-Appellee St. Paul Insurance Company on various claims made by Fulsom. The district court relied upon estoppel principles. Fulsom also appeals from a judgment awarding USF&G and St. Paul $20,692 in attorney's fees and $11,172 in litigation expenses.[1] Our jurisdiction arises under 28 U.S.C. § 1291 and we reverse.

Background

In 1994, Fulsom contracted with the Oklahoma Department of Transportation ("ODOT") to perform resurfacing, signing, striping and lighting work on State Highway 51 in Tulsa, Oklahoma. Fulsom obtained payment and performance bonds from USF&G pursuant to a "Master Surety Agreement" in which Joe and Jean Fulsom (collectively, "indemnitors") agreed to indemnify USF&G for any liability and losses it incurred as a result of Fulsom's failure to perform or comply with any of the provisions of its contract with ODOT.[2]

---

[1] USG&G and St. Paul Insurance Co. will be referred to collectively as USF&G.

[2] The Master Surety Agreement provided:

III(A). [Fulsom] shall exonerate, indemnify, and keep indemnified [USF&G] from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by [USF&G] by reason of: (1) [USF&G] having executed,

ODOT declared Fulsom in default in August 1995, at which time ODOT

called upon USF&G to take over and complete the project. USF&G, after

consultation, elected to hire Empire Construction Company ("Empire") to act as

general contractor. On December 15, 1995, the indemnitors entered into a

Repayment Agreement with USF&G setting forth the terms under which Fulsom

would repay USF&G for losses incurred.[3] The parties estimated these losses at

provided or procured BOND(S) in behalf of PRINCIPAL, or (2)
[Fulsom's] failure to perform or comply with any of the provisions of
this AGREEMENT. (formatting in original)

IV (A) The liability of [Fulsom] hereunder shall extend to and
include all amounts paid by [USF&G] in good faith under the belief
that: (1) [USF&G] was or might be liable therefore; (2) such
payments were necessary or advisable to protect any of [USF&G's]
liability or alleged liability.

(C). In the event [USF&G] should file suit at law or in equity to
enforce the terms of this AGREEMENT [USF&G] shall be entitled to
recover its own attorney's fees and expenses in connection with such
suit.

Aplt. App. at 37-38, 67.

[3] Specifically, the Repayment Agreement contains the following recitals:

WHEREAS, Indemnitors have orally acknowledged their obligation
to indemnify and hold harmless Surety from any and all reasonable
losses, costs, expenses and attorney fees which it has or may
hereafter incur by reason of the construction contract bonds; and

WHEREAS, the purpose of his document is to set forth the terms and
conditions under which Indemnitors have agreed to collateralize and
reimburse the Surety its cost to complete the Contract and its other
reasonable expenses all as provided for under the terms of the Master

approximately $850,000 but acknowledged the actual losses could be significantly lower. The Repayment Agreement supplemented the Master Surety Agreement. At the same time, Mr. Fulsom executed one promissory note individually for $400,000, and another in his representative capacity on behalf of his corporation, for $150,000. Aplt. App. at 71, 78. In April 1998, the parties entered into another agreement under which USF&G would defer collection efforts in exchange for certain payments by Fulsom. USF&G gave Fulsom a preliminary accounting in May 1998, reflecting a loss to USF&G of approximately $551,000. Fulsom ultimately paid $450,000 to USF&G.

In 1998, ODOT filed suit in state court against Fulsom seeking liquidated damages based on breach of contract. On September 9, 1999, Fulsom counterclaimed for wrongful termination and sought $1,990,000 in damages: $700,000 for lost profits, $439,000 for extra work, $300,000 in lost earnings and $551,000 for payments made or to be made to USF&G. In the pretrial order, Fulsom sought damages for payments made to USF&G. Aplt. App. at 88-89. At trial, Joe Fulsom testified that Fulsom was liable to USF&G in the amount of $551,000, and he sought that amount as damages against ODOT. Aplt. App. at 64. The state court jury returned a general verdict in favor of ODOT for

Surety Agreement.

Aplt. App. at 72.

$218,000 and in favor of Fulsom for $1,140,600. The verdict is silent as to the basis for the jury's finding, and does not break out the various elements of damages. The state court entered judgment on October 6, 2000, and ODOT satisfied the judgment in September 2001.

After the ODOT trial ended, USF&G provided Fulsom with ODOT's final estimate, reflecting that after payments had been made, USF&G suffered a total loss of $475,000. In November, 2001, Fulsom filed an action for accounting in state court and USF&G removed the case to federal court. Fulsom claims that it is not liable to USF&G for improper expenditures, unreasonable overpayments, and for amounts USF&G wrongfully failed to collect from ODOT. USF&G filed a counterclaim seeking judgment against Fulsom for $20,000, the balance of what USF&G believed Fulsom owed under the Master Surety Agreement, the Repayment Agreement, and the promissory notes.

On December 31, 2002, the district court granted summary judgment to USF&G on Fulsom's claim and partial summary judgment to USF&G on its counterclaim. The court concluded that Fulsom was barred from seeking additional amounts from USF&G based on issue preclusion and the rule against double recovery. Aplt. App. at 169. The district court left unresolved the extent of Fulsom's remaining liability to USF&G. USF&G then sought final judgment in which it requested attorney's fees and expenses it incurred during this litigation

(between October 9, 2001 and December 18, 2003). Fulsom objected, disputing its liability to USF&G for those fees and expenses and the district court denied USF&G's motion. On September 30, 2003, USF&G again sought final judgment and withdrew its claim for attorney's and consulting fees arising from the USF&G-Fulsom litigation. USF&G stated its entitlement to such fees would be addressed by post-judgment motion. The district court subsequently entered final judgment for USF&G on December 5, 2003. The final judgment did not include attorney's fees or expenses arising from the USF&G-Fulsom litigation.

On December 16, 2003, USF&G filed a motion for attorney's fees, expenses and prejudgment interest pursuant to Fed. R. Civ. P. 54(d). The district court awarded USF&G its litigation costs and expenses but left the amount unresolved. The parties ultimately stipulated as to these amounts and the district court awarded them on February 25, 2004, after rejecting Fulsom's argument that such amounts should have been proved at trial, rather than in a post-judgment motion. Fulsom now appeals from the liability judgment and the fees and costs imposed.

## Discussion

A.    Issue Preclusion

We review the district court's grant of summary judgment based on issue

preclusion (collateral estoppel) de novo. <u>Salguero v. City of Clovis</u>, 366 F.3d 1168, 1172 (10th Cir. 2004); <u>Dodge v. Cotter Corp.</u>, 203 F.3d 1190, 1197 (10th Cir. 2000). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We apply the same legal standard as the district court. <u>Johnson v. Lindon City Corp.</u>, 405 F.3d 1065, 1068 (10th Cir. 2005). We construe the record in the light most favorable to the non-moving party and draw all inferences in that party's favor. <u>Cotter</u>, 203 F.3d at 1197.

Federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in the originating state. <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 466 (1982). Thus, we look to Oklahoma state law on issue preclusion, though we note that Oklahoma law and federal law on issue preclusion are the same. <u>See Robinson v. Volkswagenwerk AG</u>, 56 F.3d 1268, 1273 n.3 (10th Cir. 1995).

The doctrine of issue preclusion (collateral estoppel) prevents relitigation of an issue decided in a prior action. <u>See Spradling v. City of Tulsa</u>, 198 F.3d 1219, 1222 (10th Cir. 2000). The elements of issue preclusion are well-settled. Issue preclusion requires that (1) the issue previously decided is identical with the one presented in the instant action, (2) the prior action was finally adjudicated on the merits, (3) the party against whom estoppel is invoked was a party or in

privity with a party in the prior action, and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue. See Cotter, 203 F.3d at 1198.

The district court determined it was "undisputed that, in the ODOT lawsuit, Fulsom sought recovery for . . . the amounts Fulsom claimed it had paid and would owe USF&G." Aplt. App. at 168. Because the jury verdict was a general one, and was less than the total amount Fulsom sought, the court acknowledged that it was "impossible to determine with certainty what disposition the jury made of Fulsom's claim based on amounts owed to USF&G." Id. at 169. The court reasoned that if the jury accepted Fulsom's claim, Fulsom could not recover here because doing so would permit double recovery. See id. The court found that to the extent the jury rejected Fulsom's claim, collateral estoppel bars relitigation.

It is essentially undisputed that the second and third elements of issue preclusion are met in this case. The problem here is with respect to the first element–we simply do not know what disposition the jury made concerning Fulsom's claim that it would be forced to indemnify USF&G. USF&G, which had the burden of proof, could not prove that the identical issue was previously and necessarily decided, hence, summary judgment based on issue preclusion was improper. Because we reverse on this ground, we need not address the fourth element, whether Fulsom had a full and fair opportunity to litigate the issue in the

first action.

For issue preclusion to apply, the precise question at issue must have been raised and determined in the prior suit. Issue preclusion is not warranted given uncertainty as to whether the question was decided. See Glass v. United States Rubber Co., 382 F.2d 378, 384 (10th Cir. 1967); Carris v. John R. Thomas & Assoc., 896 P.2d 522, 528 (Okla. 1995). That is the case here. In the ODOT litigation, Fulsom sought a total of $1,990,000. The jury awarded Fulsom $1,140,600. No special verdict was entered and no special interrogatories were given. As the district court acknowledged, it is impossible to tell whether the jury award included the $551,000 Fulsom sought from ODOT as compensation for the monies owed to USF&G. Fulsom concedes, and we agree, that if the award included the amount owed to USF&G, Fulsom could not relitigate the question here.

The district court erred in concluding that issue preclusion applies regardless of whether the state court jury verdict included the award. If the verdict did not include the $551,000, then the jury did not accept Fulsom's contention that it was liable to USF&G (or at the very least determined Fulsom had not met its burden of proof on the question). If that was the case, summary judgment for USF&G in this action would be improper–a preclusive finding of liability would be absent.

We need not speculate here as to what the jury was thinking in rendering the underlying state court verdict. The party asserting issue preclusion bears the burden of establishing that "the issue was actually litigated and determined in the prior action." See, e.g., Salazar v. City of Okla. City, 976 P.2d 1056, 1060-61 (Okla. 1999). Issue preclusion applies "only to those issues actually adjudicated and necessary or essential to the prior judgment." Carris, 896 P.2d at 528. The test is whether the issue was actually determined. Id. (emphasis added). Because uncertainty remains as to whether the jury verdict in the underlying state court action included the monies due USF&G, issue preclusion is not available and could not form the basis for summary judgment in favor of USF&G on Fulsom's claim.[4]

Similarly, issue preclusion could not be the basis for summary judgment in favor of USF&G on its counterclaim. Here, the district court implicitly approved the use of non-mutual offensive issue preclusion. Non-mutual offensive issue preclusion occurs where a plaintiff "seeks to foreclose a defendant from

---

[4] We do not address the question of whether Oklahoma law permits the defensive assertion of issue preclusion by a stranger to the first litigation because it is unnecessary to our resolution. We note, however, that the Oklahoma Supreme Court has allowed a stranger to the first litigation to defensively assert issue preclusion only in narrow circumstances. See Carris, 896 P.2d at 527-28; Anco Mfg. & Supply Co., Inc. v. Swank, 524 P.2d 7 (Okla. 1974); see also Travelers Prop. Cas. Corp. v. Jim Walter Homes, Inc., 966 P.2d 1190, 1191 & n.1 (Okla. Ct. App. 1998) (construing Anco and Carris).

relitigating an issue the defendant has previously litigated unsuccessfully in another action" against a different party. See United States v. Mendoza, 464 U.S. 154, 159 n.4 (1984). USF&G acted as a plaintiff with respect to its counterclaim. Federal courts recognize the limited use of non-mutual issue preclusion. See Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 328-29 (1971).

Because our jurisdiction is based on diversity, Oklahoma state law governs the inquiry. Oklahoma has recognized the use of non-mutual offensive issue preclusion as applied to civil arbitration awards, Cities Serv. Co. v. Gulf Oil Corp., 980 P.2d 116, 124-25 (Okla. 1999), and has given preclusive effect to a defendant's prior criminal conviction to establish one element of a plaintiff's tort claim, Lee v. Knight, 771 P.2d 1003, 1005-06 (Okla. 1989).

We need not decide whether Oklahoma would choose to extend non-mutual offensive issue preclusion in this case. Even if USF&G could have asserted preclusion with respect to its counterclaim, USF&G would have to prove that the ODOT jury actually and necessarily decided Fulsom was liable to USF&G. As previously discussed, it remains unclear what disposition the jury made of Fulsom's claim that it was entitled to damages because it was required to indemnify USF&G.

USF&G urges that the district court's order granting summary judgment

was proper on other grounds. We disagree, and address each of USF&G's arguments in turn.

Like issue preclusion, claim preclusion is insufficient to support the district court's order. Claim preclusion requires the invoking party to prove (1) a final judgment on the merits was rendered in an earlier action, (2) identity of subject matter, of the parties or their privies and of the cause of action, and (3) that the earlier court had jurisdiction. See Carris, 896 P.2d at 527; see also Wilkes v. Wyo. Dep't of Employment Division of Labor Standards, 314 F.3d 501, 503-04 (10th Cir. 2003). Under Oklahoma law, "where the causes of action differ and the parties are not identical, claim preclusion is inapplicable." Carris, 896 P.2d at 527 (citing Erwin v. Frazier, 786 P.2d 61, 64 (Okla. 1989)). USF&G was neither a party to the ODOT litigation nor in privity with a party. Thus, claim preclusion does not apply.

USF&G also urges reliance on judicial estoppel to uphold the district court's summary judgment order. Judicial estoppel, a "discretionary remedy," prevents a party from assuming a certain position in a proceeding, succeeding in asserting that position, and then asserting an inconsistent position in a later action. See Johnson, 405 F.3d at 1068. We consider three factors in determining whether to apply judicial estoppel: (1) Is the party's later position clearly inconsistent with its earlier position? (2) Did the party succeed in persuading the

court to accept its earlier position? (3) Would the party seeking to assert the inconsistent position derive an unfair advantage? Id. at 1070 (applying N.H. v. Me., 532 U.S. 742 (2001)).[5]

The parties do not dispute that Fulsom has asserted two inconsistent positions between the ODOT trial and the litigation with USF&G. USF&G cannot show that Fulsom succeeded in persuading the court to adopt its earlier position that it was liable to USF&G because, as noted, we do not know precisely how its claim was resolved. This requirement is more than a guideline– it "'ensures that judicial estoppel is applied in the narrowest of circumstances.'" Johnson, 405 F.3d at 1069 (quoting Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996)); Barringer v. Baptist Healthcare of Okla., 22 P.3d 695, 700 (Okla. 2001) ("An indispensable element of judicial estoppel is that the party taking the inconsistent position must have been successful in maintaining its prior factual position."); see also Parker v. Elam, 829 P.2d 677, 681 n.7 (Okla. 1992); Barnes v. Clark, 364 P.2d 693, 695 (Okla. 1961).

Nor do we find that Fulsom will derive an unfair advantage if it proceeds

_____

[5] We note that Oklahoma law is even more restrictive with applying judicial estoppel. Oklahoma law allows a stranger to the prior case to invoke the doctrine "*only if* it would be unconscionable to permit a party to prior litigation to assert an inconsistent position in a subsequent proceeding." Travelers, 966 P.2d at 1191 n.1 (emphasis in original); see also Willard v. Ward, 875 P.2d 441, 443 (Okla. 1994).

on its claims here. We recognize that Fulsom had every opportunity to avoid its current predicament by, for example, impleading USF&G in the ODOT litigation or requesting special interrogatories. By the same reasoning, USF&G could have intervened as a third party in the ODOT litigation.

Fulsom contends that information not known to it at the time of the first litigation is responsible for its current position. We must view the record in the light most favorable to Fulsom because it is the party opposing summary judgment. See, e.g., Johnson, 405 F.3d at 1068; Meredith v. Beech Aircraft Corp., 18 F.3d 890, 893 (10th Cir. 1994). At the very least, there are disputed facts about what Fulsom knew or should have known at the time of the ODOT trial with respect to its liability to USF&G. Moreover, USF&G has not claimed any special detriment suffered by having to litigate Fulsom's claim and defenses to USF&G's counterclaim. USF&G's claim that it was harmed because it refrained from seeking immediate recovery of Fulsom's assets in reliance on Fulsom's promise to pay, without more, is insufficient. Moreover, it is not clear that USF&G had suffered any financial loss at the time the parties executed the Repayment Agreement. For similar reasons, we decline to uphold summary judgment based on any other equitable estoppel theory.

We find unpersuasive USF&G's argument that permitting Fulsom to pursue its claims would violate the "election of remedies doctrine," which

prevents a party from recovering twice for a single wrong. See North Nat. Bank of Tulsa v. Edison, 236 P.2d 491, 495 (Okla. 1951). USF&G argues that the doctrine precludes a plaintiff from maintaining separate actions for two inconsistent remedies, and that Fulsom had a choice between recovering the amounts it paid USF&G from ODOT, or seeking reimbursement from USF&G. Again, USF&G's argument is premised upon a showing that Fulsom's recovery in the ODOT litigation included the monies Fulsom, at the time, believed it owed USF&G. Absent such a showing, there are no resultant inconsistent remedies.

USF&G also urges us to uphold the district court's grant of summary judgment because (1) the terms of the indemnity agreement are clear and unambiguous regarding Fulsom's obligation to pay all expenditures paid in good faith, and (2) the promissory notes Fulsom executed are negotiable instruments and as such are unconditional promises to pay USF&G. Aplee. Br. (03-6353) at 30-31. Fulsom has alleged that USF&G made unreasonable expenditures and negligently failed to collect monies owed. We decline to uphold the grant of summary judgment on the first ground because, viewing the record in the light most favorable to Fulsom, material triable issues of fact remain as to the reasonableness of USF&G's expenditures and collections. While we acknowledge that the states are in disagreement as to the standard to apply in reviewing a surety's expenditures, we need not reach the question of what standard Oklahoma

- 15 -

would apply.  Compare Fireman's Ins. Co. of Newark v. Todesca Equip. Co. Inc., 310 F.3d 32, 37 (1st Cir. 2002); Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983); Engbrock v. Fed. Ins. Co., 370 F.2d 784, 786-87 (5th Cir. 1967); Ins. Co. of N. Am. v. Bath, 726 F. Supp. 1247, 1251 (D. Wyo. 1989); Fid. and Deposit Co. of Md. v. Wu, 552 A.2d 1196 (Vt. 1988); Mass. Bonding & Ins. Co. v. Gautieri, 30 A.2d 848 (R.I. 1943) with Hartford v. Tanner, 910 P.2d 872 (Kan. App. 1996); Loyal Order of Moose Lodge 1392 v. Int'l Fidelity Ins. Co., 797 P. 2d 622, 626 (Alaska 1990); Rush Presbyterian St. Luke's v. Safeco Ins. Co., 712 F. Supp. 1344 (N.D. Ill. 1989); Portland v. George D. Ward & Assoc., 750 P.2d 171 (Or. Ct. App. 1988).  Here, the terms of the Repayment Agreement set forth that Fulsom's liability extends to all "reasonable" expenditures. See Aplt. App. at 72.  The Repayment Agreement supplements the Master Surety Agreement and provides some guidance as to the appropriate standard. See id.

Insofar as the second ground, we fail to see how the notes, only one of which has Fulsom Construction Company, Inc. as a maker, bar defenses between the maker and the payee, parties who have dealt with one another.  It is black-letter law that "the payee of a note can be a holder in due course and yet, if the maker has a defense against him, be subject to all of the maker's defenses."  2 James J. White & Robert S. Summers, Uniform Commercial Code: Practitioner

<u>Treatise Series</u> § 17-10 (4th ed. 1995) (emphasis in original). Thus we find USF&G's argument that the negotiable notes entitle it to summary judgment unpersuasive.

B. <u>Attorney's Fees and Litigation Expenditures</u>

In light of the above disposition, the district court's order awarding these items must also be reversed. Accordingly, there is no need to address the issues related to attorney fees and litigation expenses at this time.

REVERSED and REMANDED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge