**FARMERS ALLIANCE MUTUAL IN-SURANCE COMPANY, a Kansas Corporation, Plaintiff,**

v.

**Donald NAYLOR and Raymond Arms, Defendants.**

No. CV 06–0297 WPL/KBM.

United States District Court, D. New Mexico.

March 16, 2007.

Stevan J. Schoen, Placitas, NM, for Plaintiff.

Ripley B. Harwood, P.C., Randal W. Roberts, Albuquerque, NM, for Defendants.

Raymond Arms, Professional Engineering Services, Eufaula, AL, Pro se.

## MEMORANDUM OPINION AND ORDER DENYING NAYLOR'S SECOND MOTION FOR SUMMARY JUDGMENT

LYNCH, United States Magistrate Judge.

Farmers Alliance Mutual Insurance Company provided fire insurance for Castle Rentals, a furniture store located in Artesia, New Mexico. After a fire destroyed the building at the Castle Rentals premises, Farmers hired Donald Naylor and Raymond Arms to investigate the fire's origin. Farmers brought claims against Naylor and Arms for breach of contract, breach of warranty, and professional negligence. I granted Naylor's Motion for Summary Judgment as to Farmers' breach of contract and breach of warranty claims. *Farmers Alliance Mut. Ins. Co. v. Naylor,* 452 F.Supp.2d 1167, 1178 (D.N.M.2006). I denied Naylor's Motion as to Farmers' professional negligence claim on the ground that the parties had not analyzed whether Naylor's status as a certified fire investigator qualified him as a professional under New Mexico law and precluded application of the economic loss rule. *Id.* at 1174. This question forms the basis of Naylor's second Motion for Summary Judgment. (Doc. 29.)

### DISCUSSION

██ Naylor asserts two arguments in support of his second Motion for Summary Judgment. (Doc. 30.) First, Naylor contends that the applicable statute of limitations bars Farmers' professional negligence claim.[1] (Doc. 30 at 4.) Second, Naylor contends that the economic loss rule bars Farmers' professional negligence claim.[2] (Doc. 30 at 6.)

---

1. In his Reply, Naylor "concedes that were he to be deemed a professional subject to FAMIC's negligence claim, a four-year statute of limitations would likely apply." (Doc. 33.) Naylor points out that the two statutes of limitations that potentially govern this dispute both provide a four-year limitations period. Naylor, therefore, appears to have conceded the statute of limitations argument.

2. Additionally, Naylor raises the following two arguments in a paragraph at the end of his statute of limitations analysis: 1) malicious abuse of process; and 2) judicial estoppel. Naylor provides little factual or legal support for either argument. The lack of support for Naylor's malicious abuse of process argument is notable in light of the burdensome standard that must be met for a malicious abuse of process claim. *See DeVaney v. Thriftway Mktg. Corp.,* 124 N.M. 512, 953 P.2d 277, 285–86 (1997). Due to this lack of support, I am unable to conclude that the requirements for a claim of malicious abuse of process have been met. Naylor's argument in support of judicial estoppel is similarly unsupported. The Tenth Circuit has described the doctrine of judicial estoppel as

## Economic Loss Rule

In my decision dismissing Naylor's first Motion for Summary Judgment, I held that the economic loss rule does not bar Farmers' claim for professional negligence against Naylor provided that a certified fire investigator qualifies as a professional under New Mexico law. *Farmers Alliance Mut. Ins. Co.*, 452 F.Supp.2d at 1174. In his second Motion, Naylor contends that under New Mexico law he is not a professional and thus is able to invoke the economic loss rule's bar against Farmers' claim for professional negligence. (Doc. 30.)

■ The economic loss rule "provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F.Supp. 1269, 1270 (M.D.Pa.1990). The New Mexico Court of Appeals adopted the economic loss rule in *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539, 775 P.2d 741, 744 (1989). There, the Court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties ... economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* at 744. In a decision endorsing the Court of Appeals' adoption of the economic loss rule, the New Mexico Supreme Court observed that "[a]s a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate

remedy." *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 893 P.2d 438, 446 (1995).

In addition to New Mexico's express recognition of the economic loss rule, New Mexico decisions also emphasize the clear distinction between tort and contract law. As the New Mexico Court of Appeals observed, "Courts have long followed the rule that 'the difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law.'" *Kreischer v. Armijo*, 118 N.M. 671, 884 P.2d 827, 829 (1994) (quoting *Tamarac Dev. Co. v. Delamater, Freund & Assoc., P.A.*, 234 Kan. 618, 675 P.2d 361, 363 (1984)). Such precedent reflects New Mexico's commitment to the distinction between tort and contract law and indicates that under New Mexico law the economic loss rule applies to both contracts for goods as well as contracts for services.

■ New Mexico case law, however, does not permit an unhindered application of the economic loss rule to service contracts. Rather, tort duties that exist independent of a contract sharply limit the economic loss rule's application to service contracts. This limitation arises out of the unique relationship that often exists between service providers and their clients. Unlike buyers and sellers of goods, who are able to contractually define the expectations arising out of the commercial relationship, service providers are often licensed professionals who owe to their customers a duty of care that exists

---

follows: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken...." *Johnson v. Lindon City Corp.*, 405

F.3d 1065, 1069 (10th Cir.2005). Judicial estoppel is an equitable doctrine that the court may invoke at its discretion and that may be applied sua sponte in certain circumstances. The record currently contains insufficient facts on which to invoke the doctrine of judicial estoppel.

apart from the contractual agreements underlying their commercial relationship. Case law in New Mexico reflects New Mexico's unwillingness to allow the economic loss rule to intrude on such professional relationships. As the New Mexico Supreme Court has observed, "[w]hen professional services arising from contract are substandard, a plaintiff may bring a cause of action for malpractice based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill." *Adobe Masters, Inc. v. Downey*, 118 N.M. 547, 883 P.2d 133, 134 (1994); *see Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) ("When an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'" (citing *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000))). Under New Mexico law, therefore, the economic loss rule does not bar tort claims arising from an independent duty of care. Accordingly, to obtain the economic loss rule's protection against tort liability, Naylor's status as a fire investigator must not, under New Mexico law, qualify Naylor as a service professional subject to a professional standard of care independent of his contract with a client.

### Professional Negligence

■ To resolve Naylor's Motion, I must analyze the legal and policy considerations that give rise to a professional standard of care and determine whether New Mexico courts would impose this heightened standard of care on certified fire investigators. This analysis requires the careful consideration of the scope of professional negligence actions in New Mexico.

*Professional Negligence in New Mexico*

■ New Mexico holds providers of professional services to a higher standard of care than other non-professional occupations. Due to the unequal bargaining relationship that often exists between the provider and recipient of professional services, and in an effort to protect the disadvantaged recipient of professional services, New Mexico courts impose heightened standards of care on providers of professional services. As the New Mexico Court of Appeals has recognized, "In the relationship of accountant and client, the trust and confidence that the client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced. It is the policy of the law to encourage that trust and confidence; likewise it is the duty of the law to protect the client from the negligent acts of the professional person." *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300, 1302 (1974).

The New Mexico Court of Appeals' decision in *Lewis v. Rodriguez*, 107 N.M. 430, 759 P.2d 1012 (1988) illustrates the source of professional standards of care under New Mexico law. *Lewis* involved a suit filed against a polygraph examiner for the negligent administration of a polygraph examination. The court in *Lewis* considered the question of whether a malpractice theory of negligence, as opposed to an ordinary theory of negligence, governed the polygraph examiner's liability to the plaintiff. *Id.* at 1014. The court concluded that polygraph examiners are professionals and therefore subject to professional standards of care. *Id.* at 1016.

Although the court in *Lewis* did not expressly identify the legal and policy considerations that give rise to a professional duty of care between a polygraph examiner and the examinee, the court's decision provides insight into the method by which courts identify such a duty. The *Lewis* court considered several factors as strongly indicative of an occupation's professional status. *Id.* First, the court observed that

the exercise of judgment and discretion indicates the professional status of a particular occupation. *Id.* The court observed that the activities in which polygraph examiners exercise judgment and discretion include: "(1) deciding whether the issue sought to be resolved is one that can be addressed by a polygraph examination; (2) determining the suitability of the examinee for an examination; (3) formulating the series of questions; (4) reading and interpreting polygraphic records and responses; (5) determining what scores to assign the various responses; and (6) arriving at a conclusion, based on the scores, of whether the examinee is being truthful or deceptive." *Id.* Second, *Lewis* observed that the work of a professional is generally intellectual, non-routine, and characterized by activities that cannot be standardized in terms of time. *Id.* at 1015. Third, the court recognized that specialized intellectual study and skill indicate an occupation's professional status. *Id.*

■ The court's focus on these characteristics highlights the concerns that motivate New Mexico courts to impose professional standards of care on a particular occupation. As the court in *Chisholm* recognized, it is both the "the policy of the law to encourage th[e] trust and confidence" placed in professionals and "the duty of the law to protect the client from the negligent acts of the professional person." *Chisholm*, 526 P.2d at 1302. A service provider's exercise of discretion, application of intellectual skills to non-routine activities, and possession of knowledge acquired through specialized intellectual training and study evince a relationship in which the law seeks to encourage trust and confidence between the service provider and the recipient. Similarly, where such a relationship exists, the law also recognizes the recipient's vulnerability to the service provider's negligence. Under New Mexico law, such vulnerability triggers the law's duty to protect the recipient of professional services "from the negligent acts of the professional person." [3] *Id.* at 1302.

### *Fire Investigators as Professionals under New Mexico Law*

In his Motion, Naylor contends that his status as a certified fire investigator does not impose on him a professional duty of care to those for whom he performs services. After a careful examination of the attributes of Naylor's occupation in light of New Mexico law, I conclude that certified fire investigators are professionals and therefore subject to a professional standard of care.

According to *Lewis*, the work of a polygraph examiner involves the consistent exercise of discretion, activities that are predominately intellectual and non-routine, and the application of specialized skills acquired through intellectual instruction and study. *Lewis*, 759 P.2d at 1016. Naylor's status as a fire investigator entails several factors the *Lewis* court used to identify an occupation's professional status. Importantly, Naylor exercises considerable discretion in his role as a fire investigator.

3. Relevant New Mexico authority provides no indication that the professional standard of care developed in cases such as *Lewis*, which involved parties in a non-commercial setting, would differ when applied to a service contract in a commercial setting. *See Adobe Masters*, 118 N.M. 547, 883 P.2d 133. Rather, relevant authority appears to suggest that New Mexico courts' application of professional standards of care would apply equally in both settings. *Cf. Garcia v. Color Tile Distrib. Co.*, 75 N.M. 570, 408 P.2d 145 (1965) (recognizing an implied warranty to use reasonable skill under contract law and concluding that "one who undertakes to render services to another in the practice of a trade which is a result of acquired learning, or developed through special training and experience, is that which a reasonably prudent man, skilled in such work, would exercise").

Naylor must evaluate the scene of a fire to determine the evidence relevant to ascertaining the fire's · origin and advise the client concerning the cause and origin of the fire. (Doc. 30, Ex. A.) Similarly, Naylor's occupation involves the application of acquired intellectual skills to non-routine problems.

Unlike polygrapher examiners, however, fire investigators lack formal intellectual instruction and study. The court in *Lewis* considered a polygraph examiner's three months' study at a polygraph school, along with the polygrapher's participation in an internship, as a factor supporting the court's decision regarding the professional status of polygraph examiners. The presence or absence of formal intellectual instruction and study, however, does not appear to be dispositive of an occupation's professional status. Nor does the scope, extent, or intensity of such training and study appear dispositive. Rather, *Lewis'* focus on education and training appears to arise out of the recognition that education and training indicate an occupation characterized by the application of acquired knowledge to non-routine problems. Naylor's lack of formal education and training, therefore, does not imply the non-professional status of fire investigators. Naylor's affidavit indicates that although fire investigators undergo no formal training or education, fire investigators acquire skill and specialization through training as a firefighter or as a fire investigator for a government entity. Although not necessarily the equivalent of formal intellectual instruction or study, Naylor's training gives rise to a body of knowledge acquired through specialized experience and indicates the intellectual application of acquired knowledge to non-routine problems. To focus solely on the presence or absence of formal education and training risks narrowing the category of professional occupations and interfering with New Mexico's policy of protecting clients placed in a

vulnerable position due to a service provider's exercise of judgment and discretion in the practice of a specialized skill. Accordingly, I conclude that Naylor, as a certified fire investigator, is a professional under New Mexico law and therefore subject to a professional standard of care. The economic loss rule, therefore, does not bar Farmers' claim for professional negligence.

My conclusion that Naylor's professional status precludes application of the economic loss rule does not undermine the policy rationale underlying the economic loss rule. Courts crafted the economic loss rule to apply to commercial transactions where the parties share equal bargaining power. In the construction setting, for example, the parties to the contract frequently enjoy equal ability to anticipate the potential problems that may arise during the course of a commercial relationship and build into the commercial contract provisions reflecting such risks. *See Sun Co., Inc. v. Badger Design & Constructors, Inc.,* 939 F.Supp. 365, 372–73 (E.D.Pa. 1996).

Equal bargaining power, however, does not characterize the relationship between a professional and client. Due to the specialized nature of certain services, the recipient frequently lacks the ability to anticipate risks inherent in the provision of those services. The client's inability to anticipate certain risks prevents the parties from allocating those risks in the terms of the contract. *See Steiner Corp. v. Johnson & Higgins of California,* 196 F.R.D. 653, 658 n. 7 (D.Utah 2000) (observing that "where professionals are in the business of supplying information for the guidance of others in their business transactions 'the value of the services rendered lies in the ideas' and is dependent largely upon the professional's 'knowledge and expertise [which] cannot be memorialized in contract terms but is expected indepen-

dent of the [professional's] contractual obligations.' " (brackets in original) (quoting *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514–15 (1994))). Where the specialized nature of a particular service precludes equal bargaining power, the tort law provides an independent source of protection for parties unable to anticipate the risks that could arise in the course of a professional relationship. This approach buttresses the economic loss rule by ensuring that the rule applies only to those situations where the parties to a commercial transaction share equal bargaining power and can build into their contractual agreement the full range of foreseeable risks that could arise in the course of the commercial relationship. *See Utah Int'l, Inc.*, 775 P.2d at 744 (emphasizing the absence of bargaining power disparity as a motiving factor justifying application of the economic loss rule); *Moransais v. Heathman*, 744 So.2d 973, 983 (Fla.1999) ("Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis.").

### CONCLUSION

For the reasons discussed above, Naylor's second Motion for Summary Judgment is denied.

IT IS SO ORDERED.