In re Mohammad RIAZUDDIN and Sadia Riazuddin, Debtors.

Mohammad Riazuddin, Sadia Riazuddin, and Susan Manchester, Chapter 7 Trustee, Appellants,

v.

Schindler Elevator Corporation, Appellee.

BAP No. 06–011.

Bankruptcy No. 04–22822–NLJ.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed Feb. 12, 2007.

Bryan Garrett, Holloway, Dobson & Bachman, Oklahoma City, for Appellants.

Matthew B. Free, Thomas A. LeBlanc with him on the brief, Best & Sharp, Tulsa, OK, for Appellee.

Before McFEELEY, Chief Judge, NUGENT, and BROWN, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

Appellants Mohammad and Sadia Riazuddin (Debtors) and the Chapter 7 Trustee Susan Manchester (Trustee) appeal the bankruptcy court's order denying their motions to reopen the Debtors' Chapter 7 bankruptcy case.[1] The bankruptcy court denied the motions to reopen because it found the Debtors and the Trustee were judicially estopped from pursuing an unscheduled personal injury claim against Schindler Elevator Corporation (Appellee). For the following reasons, we reverse the decision of the Bankruptcy Court.

## I. Background

On February 16, 2004, Debtor Sadia Riazuddin was injured while riding on an escalator maintained by Appellee.[2] The Debtors retained a personal injury attorney to pursue a claim against Appellee. On August 25, 2004, the personal injury attorney sent a demand letter to Appellee.[3] Three months later, on November 23, 2004, the Debtors filed their Chapter 7 case.[4] They did not list the claim against Appellee as an asset nor did they claim it as exempt.[5] While the Chapter 7 case was open, the Debtors filed a lawsuit against Appellee which is now pending before the United States District Court for the Western District of Oklahoma.[6] They did not amend their schedules or inform the Trustee of the lawsuit. Based on the Debtors' schedules and the testimony given at the Section 341 meeting of creditors, the Trustee filed a Report of No Distribution, informing the Court that she believed there were no assets to distribute to creditors.[7] The Debtors received a discharge on May

---

1. We note that the Trustee was omitted from the caption for this appeal. The Clerk is directed to update the records in this appeal accordingly.

2. August 25, 2004, letter from the Debtors counsel to the Appellee, *in* Appellants' Appendix ("App.") at 92.

3. *Id.*

4. Voluntary Petition, *in* App. at 7.

5. Debtors' Schedules B and C, *in* App. at 14–15.

6. *See* Defendant Schindler Elevator Corporation's Motion to Dismiss and Brief in Support, *in* App. at 56.

7. Trustee's Report of No Distribution, *in* App. at 31.

8, 2005.[8] The case was closed and the Trustee discharged on May 19, 2005.[9]

Thereafter, Appellee became aware that the Debtors had filed bankruptcy and failed to list the personal injury claim in their schedules. Appellee filed a motion to dismiss the personal injury case claiming that the Debtors lacked standing and were judicially estopped from pursuing the unlisted claim.[10] The Debtors then filed a motion in the bankruptcy court to reopen their Chapter 7 case so that they could amend their schedules to include the claim against Appellee, notify the Trustee, and seek abandonment of the claim.[11] The Trustee also filed a motion to reopen the case in order to administer the claim for the benefit of the creditors.[12]

Appellee objected to the Debtors' and the Trustee's motions to reopen. It alleged that the Debtors' position in the personal injury case was inconsistent with their previously-filed bankruptcy schedules and that the doctrine of judicial estoppel prevented the Debtors from pursuing the contrary position in the personal injury case. Appellee argued that the Trustee was a successor in interest to, and bound by, the Debtors' actions in failing to schedule the claim. The Debtors responded that they had disclosed the claim to their bankruptcy attorney and relied on his advice about what should be listed on their schedules. They stated that they did not intend to mislead the bankruptcy court. The Trustee argued that Appellee lacked standing to oppose the motions to reopen because it was neither a debtor, a creditor nor a trustee.

At the hearing on the motions to reopen, the bankruptcy court refused to allow the Debtors to testify about how the personal injury claim came to be omitted from their schedules, but nevertheless ruled that the Debtors were barred from pursuing it. The court stated that "the doctrine of judicial estoppel should be applied to prevent Debtors and the Trustee from re-opening their case in order to prosecute a claim that was known at the time of the bankruptcy filing and yet omitted from the bankruptcy schedules." [13] Based on its finding of judicial estoppel, the bankruptcy court denied both the Debtors' and the Trustee's motions to reopen. Though not explicitly stated in its ruling,[14] the court obviously believed that nothing would be gained from reopening the case to allow the Debtors to amend their schedules to add a claim which would be worthless to the estate.[15]

---

**8.** Discharge of Debtor[s], *in* App. at 32.

**9.** Final Decree, *in* App. at 33.

**10.** Defendant Schindler Elevator Corporation's Motion to Dismiss and Brief in Support, *in* App. at 56–68.

**11.** Debtors' Motion to Reopen Case and Brief in Support, *in* App. at 34. In their briefs on appeal, and at oral argument, the Debtors indicated that if the case were reopened, they would list the claim and seek to exempt up to $50,000 of any recovery under Okla. Stat. tit. 31, § 1(A)(21) (2001). Apparently, they no longer seek abandonment of the claim.

**12.** Trustee's Motion to Reopen Case and Brief, *in* App. at 42.

**13.** Order Denying Motion to Reopen ("Order") at 5, ¶ 5, *in* App. at 178.

**14.** The bankruptcy court ruled that, "[i]n light of the Debtors' failure to disclose the unliquidated claims against Schindler prior to receiving their discharge and failure to amend their pleadings to include the claim, the Court finds that there is insufficient cause to warrant reopening the bankruptcy as requested by Debtors and Trustee." *Id.* at 18, ¶ 16, *in* App. at 181.

**15.** The United States Trustee filed a separate motion to reopen the case apparently in order to pursue a claim for revocation of the Debtors' discharge under 11 U.S.C. § 727(d). This motion to reopen was not opposed and was granted at the same time as the Debtors'

## II. Appellate Jurisdiction

 This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[17] The bankruptcy court's Order denying the motions to reopen was a final order for purposes of § 158(a).[18] The Appellants' notice of appeal was timely filed within ten days of entry of this Order. Neither party elected to have this appeal heard by the district court for the Western District of Oklahoma. Thus, this Court has jurisdiction to review the Order.

## III. Standard of Review

 The bankruptcy court's Order related to the reopening of a closed case, its application of the doctrine of judicial estoppel, and its decisions to admit or exclude evidence are reviewed for an abuse of discretion.[19] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[20] An abuse of discretion, however, may exist when a ruling is premised on an erroneous conclusion of law.[21] Standing is reviewed de novo.[22]

## IV. Discussion

### A. Appellee Lacked Standing to Oppose the Motions to Reopen

 Bankruptcy Rule 5010 provides that a case may be reopened "on motion of the debtor or other party in interest." In *In re Alpex*,[23] the Tenth Circuit determined that, notwithstanding the expansive view of the term "party in interest" in some bankruptcy contexts, the term should be restrictively interpreted in connection with motions to reopen. It stated that standing to request reopening of a bankruptcy case is limited to the debtor, a

and Trustee's motions were denied. Neither the United States Trustee's motion to reopen nor the order granting it is a part of the record on this appeal. Both parties represented to this Court that the order granting reopening allowed only the filing of the discharge revocation action. The parties stated that the bankruptcy court would not allow any amendments to the schedules or any other pleadings to be filed in the reopened case. Because of the disposition of this appeal, we express no opinion on whether the Bankruptcy Code authorizes a case to be reopened only for a limited purpose.

**16.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

**17.** *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citation omitted).

**18.** *In re Schicke*, 290 B.R. 792, 798 (10th Cir. BAP 2003), *aff'd by unpub. op.*, 97 Fed.Appx. 249 (10th Cir.2004).

**19.** *In re Woods*, 173 F.3d 770, 778 (10th Cir. 1999); *In re Schicke*, 290 B.R. at 798; *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir.2004); *Polys v. Trans–Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir.1991).

**20.** *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991)).

**21.** *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir.1998).

**22.** *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir.1995). *See also In re S. Med. Arts Cos.*, 343 B.R. 258, 261–62 (10th Cir. BAP 2006) (Standing is a jurisdictional prerequisite which appellate court has independent obligation to review.).

**23.** 71 F.3d at 356.

creditor, or, perhaps, a trustee.[24] In *Alpex*, the debtor's confirmed Chapter 11 plan authorized a liquidating trustee to pursue a patent infringement claim against Nintendo. Nintendo filed a motion to reopen the bankruptcy case to obtain an order interpreting the confirmed plan so as to limit the amount the trustee could recover in the patent infringement lawsuit. Nintendo claimed it had standing to seek such an order because the amount of its potential liability would be adversely affected depending on how the liquidating trustee decided to enforce the plan. It argued that its potential liability to Alpex gave it standing to challenge the plan.

The Tenth Circuit disagreed. It found that the obligation of Nintendo to Alpex in the separate civil action was not affected by the bankruptcy, but by the course of the separate lawsuit and that, "Nintendo's status as a defendant in a civil suit does not create standing here."[25]

In a recent case with facts similar to this appeal, the District Court for the Northern District of Oklahoma held that a defendant in a civil case brought by the debtor had no standing to appeal the bankruptcy court's order reopening the debtor's bankruptcy case. In *In re Kreutzer*,[26] the debtor failed to list a medical malpractice claim as an asset in his bankruptcy. After he was discharged and the case closed, he proceeded with the malpractice lawsuit. The doctor/defendant filed a motion to dismiss claiming that the debtor lacked standing to pursue the malpractice claim and that he was barred by judicial estoppel. The debtor sought to reopen his bankruptcy case to list the claim. The bankruptcy

court reopened the case and the doctor appealed. The District Court, relying on *Alpex*, held that the fact that the doctor claimed his defense in the malpractice case would be affected by the bankruptcy court's decision to reopen did not give him a "particular and direct stake" in the bankruptcy case, so as to confer standing upon him.[27]

In this case, as in both *Alpex* and *Kreutzer*, Appellee is neither a debtor, a creditor, or a trustee. It is a defendant in a separate civil suit brought by the Debtors and is, at most, a potential "debtor of a debtor." As in *Alpex*, Appellee's liability to the Debtors or the Trustee will be affected by the civil suit, not by the bankruptcy. Under the analysis of *Alpex*, Appellee's claim that its defense in the personal injury case may be affected by the reopening is insufficient to give it a direct interest in the Debtors' bankruptcy case, and therefore, it lacked standing to oppose the motions to reopen. The bankruptcy court should have disallowed Appellee's objection to the motions to reopen on this basis.

## B. The Bankruptcy Court Abused its Discretion in Failing to Reopen the Case

 Even if Appellee had standing to object to the motions to reopen, the Bankruptcy Court's decision not to reopen the case was an abuse of discretion. Section 350(b) of the Bankruptcy Code[28] provides that a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." The Tenth Circuit has stated that, although the bankruptcy court

---

24. *Id.*

25. *Id.* at 358.

26. 344 B.R. 634 (N.D.Okla.2006).

27. *Id.* at 640 (citing *In re Alpex*, 71 F.3d at 356).

28. All future references to "Section" shall refer to Title 11, United States Code, unless otherwise noted.

has discretion in many instances whether to reopen a bankruptcy case, it is the *duty* of the court to reopen a case whenever prima facie proof is made that the estate has not been fully administered.[29] A bankruptcy court's discretion in reopening "must be tethered to the parameters of § 350(b) or it is an abuse of discretion."[30] If there are assets "of such probability, administrability, and substance" in existence so as to "make it unreasonable under all the circumstances for the court not to deal with them," it is an abuse of discretion not to reopen the case to allow the assets to be administered.[31]

Section 554(c) provides that property which is scheduled but not otherwise administered when a case is closed is abandoned to the debtor and is administered for the purposes of Section 350. Since the personal injury claim was not scheduled, however, it was neither administered nor abandoned when the Debtors' case was closed.[32] It was, and remains, property of the bankruptcy estate.[33] The Debtors have asserted that the claim against Appellee could be worth $200,000, and that they intend to file for the allowed Oklahoma exemption of $50,000 in any amount recovered.[34] There is, therefore, a potential for a $150,000 recovery for creditors if the Trustee is successful in pursuing the claim.

 The bankruptcy court denied the motions to reopen because it determined that both the Debtors and the Trustee would be judicially estopped from pursuing the claim against Appellee, thus implicitly finding that the claim was valueless to the estate. As a general proposition, there is no abuse of discretion in the bankruptcy court's decision not to reopen a case if reopening would not afford the moving party any relief.[35] If judicial estoppel would not bar either the Debtors or the Trustee from pursuing the claim, however, the failure of the bankruptcy court to reopen the case would prevent the estate from realizing the value of the claim for the benefit of creditors, and would be an abuse of discretion. Therefore, whether the bankruptcy court abused its discretion in reopening the case turns on whether judicial estoppel bars the Debtors or the

---

**29.** *In re Mullendore*, 741 F.2d 306, 308 (10th Cir.1984).

**30.** *In re Alpex*, 71 F.3d at 356.

**31.** *In re Herzig*, 96 B.R. 264, 266 (9th Cir. BAP 1989) (citing *In re Johnson*, 291 F.2d 910, 911 (8th Cir.1961)); *In re Lopez*, 283 B.R. 22, 29 (9th Cir. BAP 2002) (Even assuming debtor had intentionally concealed asset by omitting it from her schedules, the bankruptcy court abused its discretion in not reopening the case so that the asset could be administered for the benefit of creditors.). *See also Doyle v. Ponsford*, 136 F.2d 401, 403 (8th Cir.1943) and *Stackhouse v. Plumlee (In re Plumlee)*, 236 B.R. 606, 610 (E.D.Va.1999) (Bankruptcy court has a duty to reopen a case if there are assets to be administered for the benefit of creditors.).

**32.** *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir.1991).

**33.** *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir.2004); *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995).

**34.** The fact that the Debtors intend to claim an exemption in the proceeds of the claim does not mean that they have an absolute right to have the exemption allowed. A party in interest may object to the exemption within thirty days, as provided in Bankruptcy Rule 4003(b). The bankruptcy court may deny a claimed exemption because of the bad faith of the debtor. This is often the result where the debtor intentionally failed to list an asset which he later tries to exempt. *See In re Calder*, 973 F.2d 862, 867–68 (10th Cir.1992).

**35.** *In re Petroleum Prod. Mgmt. Inc.*, 282 B.R. 9, 15 (10th Cir. BAP 2002).

Trustee from proceeding with the personal injury case.

It was error for the bankruptcy court to rule that judicial estoppel barred the Debtors' claim against Appellee for three reasons.

### 1. The Elements of Judicial Estoppel Were Not Met

#### a. Judicial Estoppel as Applied to the Debtors

██ The Tenth Circuit recently adopted the doctrine of judicial estoppel in *Johnson v. Lindon City Corp.*[36] The court noted that it had been reluctant to apply this doctrine in past cases, however, it felt constrained to follow the Supreme Court's decision in *New Hampshire v. Maine*[37] which, in the Tenth Circuit's view, had "altered the legal landscape." [38]

██ Judicial estoppel is an equitable doctrine designed to protect the integrity of the court system. The Tenth Circuit defined judicial estoppel as follows:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.[39]

██ While observing that there can be no precise formula, the Tenth Circuit approved of the following three factors from the *New Hampshire* case as useful tools to analyze when the doctrine should be applied: (1) the party's later position is clearly inconsistent with his earlier position; (2) the party has succeeded in persuading a court to accept the earlier position, so as to create the perception that either the first or second court was misled[40]; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if he were not estopped.[41]

██ The doctrine of judicial estoppel may be better understood by contrasting it with the general tort principal of equitable estoppel. In one sense the doctrines are similar in that "[e]quitable estoppel allows one party to prevent another 'from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage.' " [42] However, the elements of equitable estoppel differ. They are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.[43] One critical difference between equitable estop-

---

**36.** 405 F.3d 1065 (10th Cir.2005).

**37.** 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

**38.** *Johnson*, 405 F.3d at 1069.

**39.** *Id.* (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895) (alteration in original)).

**40.** Requiring this second element to be met ensures that judicial estoppel is applied in only the "narrowest of circumstances."

*Johnson*, 405 F.3d at 1069 (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996)).

**41.** *Johnson*, 405 F.3d at 1069.

**42.** *Kowalczyk v. INS*, 245 F.3d 1143, 1149 (10th Cir.2001) (quoting *Penny v. Giuffrida*, 897 F.2d 1543, 1545 (10th Cir.1990)).

**43.** *Kowalczyk*, 245 F.3d at 1143.

pel and judicial estoppel is that the party asserting equitable estoppel must demonstrate detrimental reliance.[44] Here, obviously, Appellee did not rely on the omission from the Debtors' schedules, so the doctrine of equitable estoppel is not available to it.

In contrast, judicial estoppel is designed to protect the integrity of the court system, not any individual litigant. Judicial reliance is incorporated in the second factor from the *New Hampshire* case which requires that the party to be estopped succeeded in persuading a court to accept his earlier inconsistent position. This element requires both that the court accepted the inconsistent position, and that the party to be estopped "succeeded" in some way, *i.e.*, that he received a benefit as a result of the court's acceptance of his position. As the Supreme Court has stated, "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity."[45]

It is this factor which is most problematic in this case.[46] Arguably, the bankruptcy court "adopted" the Debtors' position when entering its Final Decree, declaring the estate "fully administered."[47] This decree, however, had no permanent legal effect on the rights of any creditors or any other party. If the case is reopened, creditors will be notified of the Trustee's recovery of assets and they will have the opportunity to file claims so that they may receive a share of the estate. Any perception that the bankruptcy court was misled may just as easily be remedied by allowing the reopening of the case.

Additionally, we cannot say that the Debtors succeeded or benefitted from the omission of the claim. Unlike the situation in *Johnson v. Lindon City*, where the initial position of the criminal defendants enabled them to obtain favorable plea bargains, the Debtors did not gain anything as a result of the bankruptcy court's "acceptance" of their schedules as filed. Appellee's argument that the Debtors received a "no-asset" discharge as a result of the bankruptcy court's reliance on their schedules is specious. There is no such thing as a "no-asset" discharge under the Bankruptcy Code. The Debtors did receive a Chapter 7 discharge of their debts, but this discharge had no relation whatsoever to the assets they listed on their schedules. They would have received the same discharge whether the claim against Appellee was listed or not. The discharge is subject to revocation if it is shown that it was procured by fraud, and indeed, the United States Trustee is apparently pursuing such an action against the Debtors. The fact that a discharge was granted does not demonstrate that the bankruptcy court was misled or that the Debtors "succeeded" in the bankruptcy case as a result of the omission of the claim.

Further, we do not believe that the Debtors will receive an unfair benefit from

44. *See, Lyng v. Payne,* 476 U.S. 926, 935, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) (An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations.).

45. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations and internal quotation marks omitted).

46. The parties do not dispute that the first factor for judicial estoppel is satisfied in this case. Appellants admit that the Debtors failure to list the claim against Appellee as an asset in their bankruptcy case is clearly inconsistent with their later position that they do have a such a claim in the tort case.

47. Final Decree, *in* App. at 33.

their failure to disclose the claim. The fact that they did not include the claim in their schedules prevented it from being abandoned to them when the case was closed. It remained in the estate. Thus, their failure to list the claim prohibited them from enforcing it in their own name after the bankruptcy case was closed. The omission of the claim from their schedules may cause the Debtors significant detriment if their discharge is revoked or if any exemption they may claim is disallowed.

Furthermore, the Appellants' current position will impose no unfair detriment on Appellee. At most, the Appellee will be denied the windfall it had hoped to receive by avoiding further litigation and any potential liability on the claim.

 The three factors from the *New Hampshire* case are helpful in analyzing whether the bankruptcy court's decision that judicial estoppel precluded the Debtors and the Trustee from pursuing the unlisted claim was in error. However, the factors are not exclusive and the inquiry should not, in every case, be confined only to those factors.[48] Judicial estoppel is an equitable doctrine and the court should consider all the equities of the case. Therefore, in addition to the *New Hampshire* factors, we believe it is also appropriate to consider the interests of the creditors of this bankruptcy estate. If we were to hold that the Debtor and Trustee were estopped, the real harm would fall on them. We recognize that all courts have a strong interest in discouraging the misuse of the legal system and are rightly concerned with protecting the integrity of litigants' oaths.[49] Bankruptcy courts, in particular, must promote full and honest disclosure of assets by debtors. It makes little sense, however, to try to further this interest by punishing those whom the truthful disclosure of assets is intended to benefit. As the Seventh Circuit has recently stated:

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [injury] claim would complete the job by denying creditors even the right to seek some share of the recovery.... Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.[50]

Punishment of dishonest debtors and deterrence of those who would intentionally omit assets from their schedules is adequately addressed elsewhere in the Bankruptcy Code, in the provisions for denial or revocation of discharge, and in the case law, which allows exemptions to be denied for a debtor's bad faith.

**b. Judicial Estoppel as Applied to the Trustee**

 Even if the bankruptcy court had been correct in finding that the elements of judicial estoppel were met with respect to the Debtors, there was no basis to apply

---

**48.** In the *New Hampshire* case, the Supreme Court stated that, "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." 532 U.S. at 750, 121 S.Ct. 1808.

**49.** *See,* Ashley S. Deeks, Comment, *Raising the Cost of Lying: Rethinking Erie for Judicial Estoppel,* 64 U. Chi. L.Rev. 873 (Summer, 1997).

**50.** *Biesek v. Soo Line R.R. Co.,* 440 F.3d 410, 413 (7th Cir.2006).

the doctrine to the Trustee. None of the *New Hampshire* factors applies to the Trustee. She never took an inconsistent position with respect to the personal injury claim, she never knowingly participated in any attempt to persuade the court to adopt the Debtors' position, and she is not responsible for any perception that the bankruptcy court was misled. The Trustee gained no unfair benefit from the Debtors' failure to disclose.

Appellee has argued that the Trustee should be bound by the Debtors' conduct and the omissions in their schedules. We disagree. The general principle of bankruptcy law, that a trustee has no greater rights in an asset than the debtor, has been properly limited to pre-petition defenses to a cause of action that would have been applicable to a debtor if no bankruptcy case had been filed.[51] The post-petition conduct of the Debtors, in omitting the claim from their schedules and failing to disclose it at the Section 341 meeting, does not relate to the merits of the personal injury claim and should not limit the Trustee's rights to pursue the claim that vested in the estate immediately upon the filing of the petition.[52]

While we recognize that there is case law to the contrary,[53] we believe the better view was expressed by the Eleventh Circuit, when that court stated that the omitted claim "became an asset of the bankruptcy estate when [the debtor] filed her petition. [The trustee] then became the real party in interest.... He has never abandoned [the] claim and he never took an inconsistent position under oath with regard to this claim. Thus, [the trustee] cannot now be judicially estopped from pursuing it." [54]

## 2. The Debtors' Testimony Should Have Been Allowed

■ It was also error for the bankruptcy court to determine that judicial estoppel applied without considering the Debtors' proffered testimony that they disclosed the claim to their bankruptcy attorney and that they did not intend to omit it from their schedules. In his opening statement the Debtors' attorney stated that the Debtors were prepared "to testify ... that they advised their bankruptcy attorney ... of the claim. And for whatever reason it was not listed." [55] He later stated that, "[the Debtors] didn't have any intent to deceive this Court or to deceive the trustee. They told their lawyer, relied on their lawyer, and he didn't list it in the schedules. And I would like to call Mr. Riazuddin as a witness, if the Court would allow that, so we can discuss with him the question of intent." [56] The bankruptcy court declined to hear the testimony, finding that it was sufficient that the Debtors knew of the claim when they filed their bankruptcy and that they signed the

---

51. *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272 n. 3 (11th Cir.2004).

52. *Id.*

53. *See, e.g., In re Coastal Plains,* 179 F.3d 197, 206 (5th Cir.1999) and *West v. Family Express Corp. (In re Bilstat, Inc.),* 314 B.R. 603, 608 (Bankr.S.D.Tex.2004). Both cases hold, without analysis, that the debtors' successors in interest are judicially estopped by the debtors' actions. The 10th Circuit case of *Paul v. Monts,* 906 F.2d 1468 (10th Cir.1990), while referring in a footnote to judicial estoppel,

appears to be dealing instead with equitable estoppel because the court required the defendants to prove detrimental reliance. In any event, the discussion of estoppel as applied to the trustee in that case was dicta based on Kansas law and is not controlling here.

54. *Parker,* 365 F.3d at 1272.

55. Transcript of Hearing at 5, *ll.* 18–21, *in* App. at 155.

56. *Id.* at 18, *ll.* 14–20, *in* App. at 168.

schedules prepared by their attorney which failed to list it.[57]

The Supreme Court has specifically noted, however, that it may be inappropriate to apply judicial estoppel "when a party's prior position was based on inadvertence or mistake."[58] The Debtors' testimony may have addressed that very issue. The bankruptcy court was unable to properly evaluate all of the equitable considerations that bear on the application of judicial estoppel without considering the circumstances of the omission of the claim and the motive, or lack thereof, of the Debtors in connection therewith.

 Because the purpose of judicial estoppel is to punish those who attempt to manipulate the court system through deception, that purpose is not served by punishing those who have no such intent. The bankruptcy court could not properly evaluate the third element of judicial estoppel, that the Debtors would receive an unfair advantage or that Appellee would suffer unfair detriment, without considering evidence as to the Debtors' state of mind. Further, judicial estoppel is an equitable doctrine which should take into account all of the relevant factual circumstances of each situation. The intent of the party to be estopped is one such relevant factor.[59] Therefore, the bankruptcy court should have conducted an evidentiary hearing which would have allowed the Debtors to explain how the claim came to be omitted from their schedules and it abused its discretion in not considering the evidence relating to the Debtors' intent.

## V. Conclusion

For the foregoing reasons, the bankruptcy court's Order is REVERSED and this case is REMANDED to the bankruptcy court for entry of an order denying Appellee's objection and granting the motions to reopen.

**57.** Order at 7, ¶¶ 13–14, *in* App. at 180.

**58.** *New Hampshire v. Maine*, 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citation and internal quotation marks omitted).

**59.** *See, e.g., Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898–99 (6th Cir.2004) (Evidence of an inadvertent omission of a claim in a bankruptcy case is a reasonable and appropriate factor to consider when analyzing judicial estoppel.).